719 So.2d 778 (1998)
Ex parte Kenneth BENTFORD, et al.
(Re Kenneth BENTFORD, et al. v. TRI-STAR DEVELOPMENT CORPORATION, et al.).
1961675.
Supreme Court of Alabama.
April 24, 1998.
As Modified on Denial of Rehearing July 17, 1998.
*779 G. William Gill and James G. Bodin of McPhillips, Shinbaum, Gill & Stoner, L.L.P., Montgomery, for petitioners.
Barry E. Teague, Montgomery, for respondents Tri-Star Development Corp., Steve Mitchell, and Donna Deviney.
Robert E. Sasser and Tamara A. Stidham of Sasser & Littleton, P.C., Montgomery, for respondents Colonial Bank and Colonial Mortgage Co.
KENNEDY, Justice.
Kenneth and Margaret Bentford, Andre and Demeiter Lawrence, Willis and Shirley Underwood, Anthony Alexander, Angelia Woods, and Willie A. Lewis, the plaintiffs in an action pending in the Montgomery Circuit Court, petition for a writ of mandamus directing Judge Eugene W. Reese 1) to withdraw his order granting the defendants' motion to compel arbitration and stay the proceedings and 2) to enter an order denying the defendants' motion.
On November 18, 1994, the plaintiffs sued Tri-Star Development Corporation ("Tri-Star") and Steve Mitchell. The complaint, later amended to add Donna Deviney as a defendant, alleged breach of contract in the construction and sale of certain houses; negligence; breach of various warranties; and fraud.[1] Each plaintiff or pair of plaintiffs had contracted with Tri-Star for Tri-Star to build them a house. In the same complaint, the Bentfords and the Underwoods also sued Colonial Bank and Colonial Mortgage Company.[2]
*780 Before trial, however, the defendants moved to compel arbitration, based on an arbitration provision contained in warranty booklets mailed to the plaintiffs by Residential Warranty Corporation ("RWC") several weeks after the closing of the purchases of their respective homes.[3] On June 4, 1997, the trial court granted the motion to compel arbitration as to all claims and stayed the proceedings.
The plaintiffs offer several reasons for their argument that the trial court erred in compelling arbitration. First, they contend that they never entered into an arbitration agreement with the defendants or with RWC. Second, they assert that the defendants waited over 2½ years before seeking to compel arbitration and that before they sought arbitration the defendants had substantially invoked the litigation process, by participating in discovery and various pretrial matters; the plaintiffs say they were prejudiced by the defendants' delay and their invoking the litigation process and, thus, that the defendants had waived any right they may have had to compel arbitration. Third, the plaintiffs argue that even if the RWC booklets contained a valid arbitration provision that would apply to the plaintiffs and RWC, it would not apply to Colonial Bank and Colonial Mortgage Company, which, as to any such provision, were nonsignatories.
A petition for the writ of mandamus is the appropriate means by which to challenge a trial court's order compelling arbitration. Ex parte Gates, 675 So.2d 371, 374 (Ala.1996).
"Mandamus is an extraordinary remedy and requires a showing that there is: `(1) a clear right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"
In Carl Gregory Chrysler-Plymouth, Inc. v. Barnes, 700 So.2d 1358 (Ala.1997), this Court noted that "[t]he first task of this Court, when reviewing an arbitration provision, is to determine whether the parties agreed to arbitrate the dispute at hand." Id. at 1360. In the present case, the plaintiffs argue that they never entered into an arbitration agreement with the defendants or with the RWC. "Both federal and state courts have consistently held that the duty to arbitrate is a contractual obligation and that a party cannot be required to submit to arbitration any dispute he did not agree to submit." Capital Investment Group, Inc., v. Woodson, 694 So.2d 1268, 1270 (Ala.1997), citing AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), and A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358 (Ala.1990).
It is undisputed that at various times, ending on or about December 28, 1992, the plaintiffs entered into contracts for the purchase of houses constructed by Tri-star and completed applications with RWC for warranties covering these homes. None of the documents signed by the plaintiffs contained an arbitration provision or made any reference to an arbitration provision. The only logical explanation for the trial court's compelling arbitration in this case is supplied by the defendants' contention that compelling arbitration is appropriate because of the language used in certain clauses in the warranty application that reference other documents. These clauses read as follows:
"By signing, the Purchaser acknowledges that he/she has read the RWC Limited Warranty Program booklet and has received a copy of this application along with any forms needed to comply with state or local governmental requirements."
"Your validated warranty consists of this Application for Warranty, the validated RWC Limited Warranty Program booklet and any endorsements added thereto." *781 Coincidentally, the RWC "Limited Warranty Program" booklet contains the only arbitration provision upon which the trial court could have relied to compel arbitration in this case. Thus, the defendants argue, and the trial court apparently agreed, that the defendants should be allowed to move this case from the Montgomery County Circuit Court to the arbitration forum by operation of clauses that attempt to incorporate by reference some unsigned documents, one of which contains an arbitration provision. We cannot agree.
It would be fundamentally unjust for this Court to articulate a standard whereby the citizens of this state, when entering contracts, would be required to leap from document to document searching for provisions that, in amongst the fine print and voluminous documentation, might operate to deprive them of their fundamental rights without their acknowledged assent. It was, therefore, unreasonable for the trial court to find that these plaintiffs had agreed to submit their claims against these defendants to arbitration, when they had not specifically agreed to do so.
Aside from claiming that they did not specifically agree to arbitrate their claims against these defendants, the plaintiffs support their petition by arguing that Tri-Star, Mitchell, and Deviney waived their right to move the trial court to compel arbitration, by substantially invoking the litigation process.
A party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Companion Life Insurance Co. v. Whitesell Manufacturing, Inc., 670 So.2d 897 (Ala. 1995). No rigid rule exists for determining what constitutes a waiver of the right to arbitration; this issue must be resolved on the particular facts of each case. Huntsville Golf Development, Inc. v. Aetna Casualty & Surety Co., 632 So.2d 459 (Ala.1994).
Plaintiffs' exhibit WC, a case action summary from the trial court, indicates the following about the extent to which Tri-Star, Mitchell, and Deviney invoked the litigation process: A summons and a complaint were executed upon Tri-Star and Mitchell on November 23, 1994. Nearly 2½ years passed before Tri-Star and Mitchell, on May 20, 1997, filed their brief in support of a motion to dismiss or, in the alternative, a motion to compel arbitration. During this period, Tri-Star and Mitchell answered the complaint and filed two motions to dismiss, three motions to continue, a motion for an extension of time, and a motion for a partial summary judgment. In addition, during this time, the plaintiffs filed a motion to compel, a notice of deposition, and an order to appear at deposition. Moreover, the trial court conducted three hearings and three scheduling conferences and set the case for pretrial on February 27, 1997, with the trial originally scheduled to be held on March 3, 1997, a date two months before Tri-Star and Mitchell's eventual filing of the motion to compel arbitration.
With regard to defendant Donna Deviney, the facts surrounding her invocation of the litigation process are virtually identical to those relating to Tri-Star and Mitchell. The amended complaint naming Deviney as a defendant was filed on June 8, 1995; a summons and a complaint were served on her on June 15, 1995, eight months after the filing of the original complaint. As was the case with Tri-Star and Mitchell, Deviney filed numerous motions requiring the plaintiffs' response; participated in discovery on numerous occasions; and delayed seeking to compel arbitration until two months after the original date set for trial. Moreover, it is undisputed that Deviney waited nearly two years before seeking to invoke her alleged right to compel arbitration.
We conclude that the plaintiffs would be prejudiced by Tri-Star, Mitchell, and Deviney's unreasonable delay in seeking to compel arbitration.
The petition for the writ of mandamus is due to be granted. The trial court is directed to vacate its order compelling arbitration and staying the proceedings.
WRIT GRANTED.
ALMON, SHORES, and COOK, JJ., concur.
*782 HOUSTON and LYONS, JJ., concur in the result.
HOOPER, C.J., and SEE, J., dissent.
MADDOX, J., recuses himself.
LYONS, Justice (concurring in the result).
I concur in the result because the defendants failed to demand arbitration until after a trial date had been set and a continuance had been granted.
HOUSTON, J., concurs.
HOOPER, Chief Justice (dissenting).
I must respectfully dissent.
The plaintiffs argue that they never agreed to the terms of the warranty booklet because they did not receive the booklet until after the closings. However, the warranty application they completed at the time of closing contains language that binds them to the terms of the warranty booklet. A clause in the application states: "By signing, the Purchaser acknowledges that he/she has read the RWC Limited Warranty Program booklet and has received a copy of this application along with any forms needed to comply with state or local governmental requirements." It does not matter whether the plaintiffs actually read the booklet, because they signed the application stating that they had read it. Therefore, I would hold that the plaintiffs are bound by the terms of the booklet.
By executing the application, the plaintiffs acknowledged and accepted the conditions of the warranty. Their failure to read the booklet before acknowledging that they had read it should not be charged to the defendants, unless they intentionally prevented the plaintiffs from obtaining the booklet. The plaintiffs presented no evidence to suggest that was the case. The arbitration clause was one of the conditions of the warranty, and the plaintiffs are therefore bound to it. Finally, the application states: "Your validated warranty will consist of this Application for Warranty, the validated RWC Limited Warranty Program booklet and any endorsements added thereto." Therefore, the warranty consists of the application and the booklet, and the plaintiffs have agreed to comply with the conditions of the warranty.
Another issue raised by the plaintiffs is whether Colonial Bank and Colonial Mortgage Company (collectively referred to hereinafter as "Colonial") can demand arbitration even though they did not sign the warranty application. The builder (Tri-Star) was specifically mentioned in the warranty application as being a party to the warranty. However, Colonial was not mentioned specifically in the application as being subject to the terms of the warranty booklet. Nevertheless, I would hold that Colonial may demand arbitration as a third-party beneficiary of the warranty contract.
"A party claiming to be a third-party beneficiary of a contract must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party." Weathers Auto Glass, Inc. v. Alfa Mutual Ins. Co., 619 So.2d 1328, 1329 (Ala. 1993). The purpose of the warranty is to protect the homeowner, the builder, and the parties involved in the financing. The warranty gives assurance that the house (the security for the loan) will remain in repaired condition. The warranty is a condition for the loan. Thus, I believe that the parties to the warranty intended to benefit Colonial.
Colonial also should be entitled to demand arbitration because of the relationship of the parties. The plaintiffs purchased the warranties, which were required by the Department of Veterans' Affairs Loan Guarantee Program and by Colonial. By requiring the warranty, Colonial was seeking to protect its interests. Although it was not a party to the warranty contract, Colonial is protected by it. The warranties would not exist but for the financing of the homes provided by Colonial. In other words, there would be nothing to protect had Colonial not financed the transaction. Colonial's investment in the mortgage would be at risk without the warranties.
The plaintiffs did not pay cash for their houses. Instead, they contracted with Colonial for a loan. Thus, the interests of Colonial are so intertwined with the interests of the purchasers and the builder that Colonial is entitled to demand arbitration under the clause found in the warranty booklet. The *783 plaintiffs should arbitrate their claims against Colonial because their claims are founded on, and are intertwined with, the facts surrounding the underlying contract that contains the arbitration clause. See, e.g., Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753 (11th Cir.1993).
I also believe that the defendants did not substantially invoke the litigation process before seeking to compel arbitration. The plaintiffs argue that 2½ years passed from the time the complaint was filed to the time arbitration was demanded. The plaintiffs do not give specific details about what steps the defendants took to indicate a desire to litigate. They say only that the defendants "were engaged in substantial litigation for 2 1/2 years." They make a reference to the case action summary sheet to support this statement. The case action summary sheet indicates several filings by both sides. However, these filings involve matters that do not reflect a desire on the part of the defendants to substantially invoke the litigation process. Very little discovery has taken place. The plaintiffs filed only one notice of deposition, and the defendants filed only one discovery request, which accompanied their answer. Therefore, a close analysis of the case action summary sheet shows that the defendants have not waived the right to demand arbitration.
To establish a waiver, the plaintiffs must show that Tri-Star substantially participated in the litigation process and that the plaintiffs would be prejudiced if Tri-Star is now allowed to invoke the arbitration process. Terminix Int'l Co. Ltd. Partnership v. Jackson, 669 So.2d 893 (Ala.1995). The plaintiffs cite Ex parte Smith, 706 So.2d 704 (Ala. 1997), as authority for their waiver argument. However, we held in that case: "No rigid rule exists for determining what constitutes a waiver of the right to arbitration; this issue must be resolved on the particular facts of each case." 706 So.2d at 705. In this present case, there has been limited activity in the trial court, and the plaintiffs have not shown that they would be prejudiced by the delay in demanding arbitration. In fact, the arbitration process may expedite the resolution of the dispute and thus mollify the effect of the 2½-year delay the plaintiffs have already experienced. With regard to the waiver issue, I cannot say the trial court abused its discretion by granting the motion to compel arbitration.
Because of the extraordinary nature of the writ of mandamus and because of the federal presumption in favor of arbitration, I would hold that Judge Reese did not err in granting the defendants' motion to compel arbitration. I would deny the petition.
SEE, J., concurs.
NOTES
[1] Steve Mitchell is the president and owner of Tri-Star, and Donna Deviney is a principal in the corporation. Both have been named individually in this action because of their involvement with the relevant transactions.
[2] Colonial Bank was sued because it financed the construction loans, and Colonial Mortgage was sued because, upon completion of the homes, the plaintiffs obtained mortgage loans from it.
[3] Pursuant to a requirement by the United States Department of Veterans' Affairs, which was to guarantee the mortgage loans, the plaintiffs agreed to 10-year warranty contracts with Residential Warranty Corporation.