753 So.2d 497 (1999)
GREEN TREE FINANCIAL CORPORATION OF ALABAMA
v.
Johnny VINTSON and Bonnie Vintson.
1972191.
Supreme Court of Alabama.
October 1, 1999.
*498 Robert A. Huffaker and Rachel Sanders-Cochran of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for appellant.
Garve Ivey, Jr., and Allison Shelley of Ivey & Ragsdale, Jasper, for appellees.
SEE, Justice.
Johnny Vintson and his wife, Bonnie Vintson, sued Green Tree Financial Corporation *499 of Alabama ("Green Tree"), alleging that Green Tree had fraudulently induced them to purchase a mobile home, had violated the Alabama Mini-Code, and had breached an agreement to pay off several of the Vintsons' preexisting debts. Green Tree moved to compel arbitration of the Vintsons' claims. The trial court granted the motion, and the Vintsons filed a motion to "reconsider" the order compelling arbitration. The trial court denied the motion, and the Vintsons filed a second motion to reconsider. The trial court granted this second motion and granted the Vintsons a jury trial on the issue of arbitrability. Green Tree appealed the trial court's order denying arbitration. We reverse and remand.

I.
In December 1995, the Vintsons purchased a mobile home from Cooner Enterprises, d/b/a Jasper West Manufactured Homes ("Cooner"). Green Tree financed the purchase. As part of the transaction, Cooner promised to pay off several of the Vintsons' preexisting debts and to give the Vintsons an additional $1,000. In connection with the purchase, the Vintsons signed a retail installment agreement, which was assigned to Green Tree. The installment agreement contained an arbitration provision, which stated:
 "14. ARBITRATION: ALL DISPUTES, CLAIMS, OR
CONTROVERSIES ARISING FROM OR RELATING TO THIS CONTRACT
OR THE PARTIES THERETO SHALL BE RESOLVED BY BINDING
ARBITRATION BY ONE ARBITRATOR SELECTED BY YOU [Seller]
WITH MY [Buyer's] CONSENT. THIS AGREEMENT IS MADE
PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND
SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT AT 9
U.S.C. SECTION 1. JUDGMENT UPON THE AWARD RENDERED MAY
BE ENTERED IN ANY COURT HAVING JURISDICTION. THE PARTIES
AGREE AND UNDERSTAND THAT THEY CHOOSE ARBITRATION INSTEAD
OF LITIGATION TO RESOLVE DISPUTES. THE PARTIES
UNDERSTAND THAT THEY HAVE A RIGHT TO LITIGATE DISPUTES IN
COURT, BUT THAT THEY PREFER TO RESOLVE THEIR DISPUTES
THROUGH ARBITRATION, EXCEPT AS PROVIDED HEREIN. THE
PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY
HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER
*500
THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS
PROVIDED HEREIN). THE PARTIES AGREE AND UNDERSTAND THAT
ALL DISPUTES ARISING UNDER CASE LAW, STATUTORY LAW, AND
ALL OTHER LAWS INCLUDING, BUT NOT LIMITED TO, ALL
CONTRACT, TORT AND PROPERTY DISPUTES WILL BE SUBJECT TO
BINDING ARBITRATION IN ACCORD WITH THIS CONTRACT. THE
PARTIES AGREE AND UNDERSTAND THAT THE ARBITRATOR SHALL
HAVE ALL POWERS PROVIDED BY LAW, THE CONTRACT AND THE
AGREEMENT OF THE PARTIES. THESE POWERS SHALL INCLUDE ALL
LEGAL AND EQUITABLE REMEDIES INCLUDING, BUT NOT LIMITED
TO, MONEY DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE
RELIEF. NOTWITHSTANDING ANYTHING HEREUNTO [sic] THE
CONTRARY, YOU RETAIN AN OPTION TO USE JUDICIAL (FILING A
LAWSUIT) OR NONJUDICIAL RELIEF TO ENFORCE A SECURITY
AGREEMENT RELATING TO THE MANUFACTURED HOME SECURED IN A
TRANSACTION UNDERLYING THIS ARBITRATION AGREEMENT, TO
ENFORCE THE MONETARY OBLIGATION SECURED BY THE
MANUFACTURED HOME OR TO FORECLOSE ON THE MANUFACTURED
HOME. THE INSTITUTION AND MAINTENANCE OF A LAWSUIT TO
FORECLOSE UPON ANY COLLATERAL, TO OBTAIN A MONETARY
JUDGMENT OR TO ENFORCE THE SECURITY AGREEMENT SHALL NOT
CONSTITUTE A WAIVER OF THE RIGHT OF ANY PARTY TO COMPEL
ARBITRATION REGARDING ANY OTHER DISPUTE OR REMEDY SUBJECT
TO ARBITRATION IN THIS CONTRACT, INCLUDING THE FILING OF
A COUNTERCLAIM IN A SUIT BROUGHT BY YOU PURSUANT TO THIS
PROVISION.
 "15. WAIVER OF JURY TRIAL: I HEREBY WAIVE ANY RIGHT
TO A TRIAL THAT I HAVE IN ANY SUBSEQUENT LITIGATION
BETWEEN ME AND THE SELLER, OR ME AND ANY ASSIGNEE OF THE
SELLER, WHERE SUCH LITIGATION ARISES OUT OF, IS RELATED
TO, OR IS IN CONNECTION WITH ANY PROVISION OF THIS
CONTRACT WHETHER THE CONTRACT IS ASSERTED AS THE BASIS
FOR A CLAIM, COUNTERCLAIM OR CROSSCLAIM, OR A DEFENSE TO
A CLAIM, COUNTERCLAIM OR CROSSCLAIM.
 "NOTICE: ANY HOLDER OF THIS CONSUMER
CONTRACT IS SUBJECT TO ALL CLAIMS AND
DEFENSES WHICH THE DEBTOR COULD ASSERT
AGAINST THE SELLER OF GOODS OR SERVICES
OBTAINED PURSUANT HERETO OR WITH THE
PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE
DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE
DEBTOR HEREUNDER.
 "MY SIGNATURE BELOW ACKNOWLEDGES I
UNDERSTAND PARAGRAPHS 14 AND 15 ABOVE REQUIRE
*501
BINDING ARBITRATION AND WAIVE MY RIGHT TO A
JURY TRIAL IF A DISPUTE ARISES UNDER THIS
CONTRACT.
 "YOU HAVE THE OPTION TO PROVIDE SUCH
PHYSICAL DAMAGE INSURANCE AS IS REQUIRED, IN
CONNECTION WITH THIS PURCHASE, EITHER THROUGH
AN EXISTING POLICY OR BY A POLICY INDEPENDENTLY
OBTAINED BY YOU.
 "BUYER ACKNOWLEDGES RECEIPT OF A COMPLETED
COPY OF THE CONTRACT. CAUTION  IT IS
IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT
BEFORE YOU SIGN IT.
" [/s/] Johnny R. Vintson [/s/] Bonnie J. Vintson"
(Emphasis and enlarged print in original.)
Less than two months after purchasing the mobile home, the Vintsons sued Green Tree,[1] alleging that Green Tree had fraudulently induced them to purchase the mobile home, had violated the Alabama Mini-Code, and had breached its agreement to pay off several of the Vintsons' preexisting debts. Pursuant to the arbitration provision in the installment agreement, Green Tree moved to compel arbitration of the Vintsons' claims. The trial court granted the motion, holding that the language of the provision was clear and unambiguous and that the language of the provision encompassed all of the Vintsons' claims. The Vintsons moved the trial court to "reconsider" its order, arguing that Green Tree could not enforce the provision because it was not a signatory to the contract; that they were entitled to a jury trial on the issue of arbitrability; and that it was improper to order arbitration, because they had sought class certification. The trial court denied the motion. The Vintsons filed a second motion to reconsider. The Vintsons, citing Allstar Homes, Inc. v. Waters, 711 So.2d 924, 925 (Ala. 1997), argued that they were entitled to have a jury determine the validity of the arbitration provision because there was a dispute about whether they had agreed to arbitrate their claims. After an evidentiary hearing, the court granted this second motion to reconsider and ruled that the Vintsons were entitled to a jury trial on the issue of arbitrability. The court held that the arbitration provision was contained in a contract of adhesion and was unconscionable. It also held that there was a question of fact as to whether Green Tree had suppressed material facts regarding the arbitration provision and held that Alabama law prohibits arbitration of claims alleging intentional torts.[2] Green Tree appealed from the order denying arbitration.

II.
Section 2 of the Federal Arbitration Act ("FAA") provides that "[a] written provision in any ... contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Moreover, the Supreme Court of the United States has stated that the FAA establishes a strong federal policy favoring arbitration. *502 Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Accordingly, trial courts are required to stay or dismiss proceedings and to compel arbitration when the parties have entered into a valid contract containing an arbitration agreement, and a trial court's denial of a motion to compel arbitration is subject to appeal. See, e.g., Patrick Home Center, Inc. v. Karr, 730 So.2d 1171, 1172 (Ala.1999). This Court will apply the de novo standard of review to a trial court's order denying a motion to compel arbitration. Id.

A.
The Vintsons concede that they signed the installment agreement that contains the arbitration provision. The Vintsons do not claim that their purchase of the mobile home did not involve interstate commerce. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (holding that all arbitration provisions dealing with transactions involving interstate commerce are subject to the FAA). The Vintson argue, however, that they did not knowingly, willingly, or voluntarily agree to waive their right to a jury trial.[3] Specifically, the Vintsons argue that they did not know there was an arbitration provision in the installment agreement and that the arbitration provision did not give the Vintsons sufficient information to permit them to make an informed decision.
"[O]rdinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby." Power Equipment Co. v. First Alabama Bank, 585 So.2d 1291, 1296 (Ala.1991). Directly above the lines on which the Vintsons signed, the retail installment agreement stated in large, bold letters: "BUYER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE CONTRACT. CAUTIONIT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT." This statement should have alerted the Vintsons that they should read the entire contract.[4] See Green Tree Agency, Inc. v. White, 719 So.2d 1179, 1180 (Ala.1998). Had the Vintsons read the contract, they would have seen paragraph 14, which provided that they agreed to waive their right to a jury trial and to arbitrate all of their disputes arising under, or relating to, the installment agreement, and they would have seen paragraph 15, which provided that the Vintsons waived their right to a jury trial in any subsequent litigation with the seller or its assignees. Moreover, the Vintsons would have seen that paragraph, a few lines above their signature, stating in large, bold letters: "MY SIGNATURE BELOW ACKNOWLEDGES I UNDERSTAND PARAGRAPHS 14 AND 15 ABOVE REQUIRE BINDING ARBITRATION AND WAIVE MY RIGHT TO A JURY TRIAL IF A DISPUTE ARISES UNDER THIS CONTRACT."
The Vintsons both testified that they could have read the installment *503 agreement if they had wanted to and that no one prevented them from reading it. Accordingly, the Vintsons had notice of the arbitration provision, whether or not they chose to read the retail installment contract. See Green Tree, 719 So.2d at 1180; First Family Fin. Servs., Inc. v. Rogers, 736 So.2d 553 (Ala.1999). The Vintsons, relying on Ex parte Bentford, 719 So.2d 778 (Ala.1998) (stating that a contract could not incorporate by reference an arbitration provision in another document), argue that they had to have actual notice of the arbitration provision to be bound by it. However, actual notice of the arbitration provision is not required for the provision to be enforceable. See First Family Fin. Servs., 736 So.2d at 558 (enforcing arbitration provision against buyers who elected not to read the contract that contained the provision). Moreover, this Court's more recent opinions have implicitly overruled Bentford to the extent it stated that a contract could not incorporate by reference an arbitration provision in another document. See Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala. 1998); McDougle v. Silvernell, 738 So.2d 806 (Ala.1999); Woodmen of the World Life Ins. Soc'y v. Harris, 740 So.2d 362, 368 (Ala.1999).
The Vintsons also argue that the arbitration provision did not provide sufficient details about the process of arbitration for them to make an informed decision. Specifically, the Vintsons argue that the arbitration provision should have compared the procedural protections available in a trial with the procedural protections available in an arbitration hearing; should have compared the relative costs of litigation and arbitration; and should have discussed various scenarios that could potentially influence an arbitrator's or a judge's decision. The Vintsons, however, cite no authority to support this argument.[5] In any event, the Vintsons do not assert that they requested such information before signing the installment agreement. The installment agreement expressly stated in more than one instance that by signing it the Vintsons were agreeing to arbitrate all of their disputes arising under or relating to the installment agreement. The arbitration provision disclosed how the arbitrator would be selected and what his powers would be. The arbitration provision also expressly stated that the Vintsons had a right to litigate their disputes in court, but that they were agreeing to waive that right. Accordingly, the arbitration provision gave the Vintsons enough information for them to agree to arbitrate their disputes.[6] See generally Ex parte Smith, 736 So.2d 604, 611 (Ala.1999) (holding that a trial court did not abuse its discretion by compelling arbitration under a substantially identical arbitration provision).

B.
The Vintsons argue that the arbitration agreement is a contract of adhesion and is unenforceable because it is unconscionable. Specifically, the Vintsons assert that the arbitration provision is unconscionable because they were unsophisticated consumers and: (1) the arbitration provision lacked mutuality of remedy in that Green Tree retained the right to litigate certain disputes; and (2) they lacked any meaningful choice. "A court should *504 refuse to enforce an arbitration agreement where the record supports a determination of unconscionability." Ex parte Napier, 723 So.2d 49, 52 (Ala.1998). However, "agreements to arbitrate are not in themselves unconscionable." Ex parte McNaughton, 728 So.2d 592, 598 (Ala. 1998). The burden of proving unconscionability of an arbitration agreement rests with the party challenging the agreement. Id.
The Vintsons' mutuality-of-remedy argument is simply erroneous. This Court has explained:
"The doctrine of mutuality of remedy is limited to the availability of the ultimate redress for a wrong suffered by a plaintiff, not the means by which that ultimate redress is sought. A plaintiff does not seek as his ultimate redress an arbitration proceeding or a court proceeding. Instead, he seeks legal relief (e.g., damages) or equitable relief (e.g., specific performance) for his injury, and he uses the proceeding as a means to obtain that result."
Id.
The Vintsons' claim that they had no meaningful choice with respect to the arbitration provision is also meritless. The Vintsons argue that all of the lenders through which Cooner financed purchases had arbitration provisions in their financing agreements. However, the evidence in the record is that at least one of the lenders doing business with Cooner, SouthTrust Bank, did not have an arbitration provision in its financing agreement at the time of the Vintsons' purchase. Moreover, the Vintsons presented no evidence to suggest that any of the lenders through which Cooner financed purchases, including Green Tree, would have refused to finance the purchase had the Vintsons objected to the arbitration provision. Nor did the Vintsons present evidence indicating that they could not have independently secured financing by an agreement that would not have required arbitration. Accordingly, the Vintsons have failed to establish that they did not have any meaningful options.

C.
The Vintsons argue that the arbitration clause should not be enforced because, they say, they were under duress when they signed the installment contract. Specifically, they argue that the Cooner salesman unduly pressured them by offering them $1,000 in "Christmas money" as an incentive to close the transaction. Although the doctrine of duress can be applied to invalidate an arbitration agreement, without contravening the FAA, see Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), the duress must relate specifically to the arbitration clause rather than to the contract as a whole. See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 637 F.2d 391, 398 & n. 11 (5th Cir.1981). The alleged duress in this case relates to the installment contract as a whole, and the question of duress therefore should be resolved in arbitration.[7] See Prima Paint, 388 U.S. at 403-04, 87 S.Ct. 1801; Merrill Lynch, 637 F.2d at 398 & n. 11.

III.
The Vintsons, relying on Ex parte Discount Foods, Inc., 711 So.2d 992 (Ala.1998) (plurality) (stating that an arbitration *505 provision was not broad enough to include intentional-tort claims), argue that they should not be required to arbitrate their intentional-tort claims. The Vintsons' reliance on Discount Foods is misplaced. Whether an arbitration provision encompasses a party's claims "is a matter of contract interpretation, which interpretation is guided by the intent of the parties, and which intent, absent ambiguity in the clause, is evidenced by the plain language of the clause." Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102, 110 (Ala.1995). The language of the arbitration provision in this case is not ambiguous. Under the plain language of the provision, the Vintsons agreed to arbitrate all disputes "arising from or relating to" the contract. "This Court has held [that] where a contract signed by the parties contains a valid arbitration clause that applies to claims `arising out of or relating to' the contract, that clause has a broader application than an arbitration clause that refers only to claims `arising from' the agreement." Reynolds & Reynolds Co. v. King Automobiles, Inc., 689 So.2d 1, 2-3 (Ala.1996) (emphasis in original). All of the Vintsons' claimsthat Green Tree fraudulently induced them to purchase a mobile home, that it violated the Alabama Mini-Code, and that it breached its agreement to pay off several preexisting debts arise from or relate to the installment contract. In fact, the Vintsons concede as much in their brief, when they state that their complaint was based on "fraud relating to this transaction." Brief of Appellee at 2. Accordingly, the plain language of the arbitration provision encompasses the Vintsons' claims.

IV.
The circuit court improperly denied Green Tree's motion to compel arbitration. We reverse the order denying that motion and remand the cause for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, and BROWN, JJ., concur.
LYONS, J., concurs specially.
COOK, J., concurs in the result.
JOHNSTONE, J., dissents.
LYONS, Justice (concurring specially).
I agree that a "mutuality-of-remedy" argument, standing alone, would not support a holding that the arbitration clause at issue in this case is unconscionable. In Green Tree Financial Corp. of Alabama v. Wampler, 749 So.2d 409 (Ala.1999), and Ex parte Parker, 730 So.2d 168 (Ala.1999), we held that an agreement that gives one party the option to litigate while restricting the other party to arbitration, standing alone, was not sufficient to warrant a finding of unconscionability. In Wampler, Parker, and Ex parte Napier, 723 So.2d 49 (Ala.1998), we suggested certain factors relevant to the question whether the arbitration agreement was unconscionable. The fact that a provision gives one party the option to litigate while restricting the other party to arbitration could be relevant if it is accompanied by other factors referred to in Wampler, Parker, and Napier.
JOHNSTONE, Justice (dissenting).
I respectfully dissent, and I write simply to reiterate a principle I have consistently advanced. It is that we should condemn as unconscionable an arbitration agreement wherein the party who imposes the agreement reserves to itself the right to sue in court but denies that right to the other party and, instead, relegates the other party to arbitration. By so doing, the imposing party reveals that it does not trust arbitration as a good enough forum for itself. Such a party should not be heard to say that it is not committing oppression by relegating the other party to such a forum. See my dissents in Ex parte Perry, 744 So.2d 859 (Ala.1999); Ex parte Smith, 736 So.2d 604 (Ala.1999); and Ryan's Family Steak Houses, Inc. v. Regelin, 735 So.2d 454 (Ala.1999). See *506 also my special writing in Patrick Home Center, Inc. v. Karr, 730 So.2d 1171 (Ala. 1999). I realize that I am swimming against the current of this Court on this principle.
NOTES
[1] The Vintsons also sued Cooner. Cooner, however, entered into a pro tanto release with the Vintsons, and Cooner was dismissed.
[2] It is not clear why the court ruled that arbitrability was a jury question if it considered the provision to be in fact unconscionable and in violation of Alabama law.
[3] The Vintsons also argue that the arbitration provision is unenforceable for want of consideration. Specifically, the Vintsons argue that consideration separate and distinct from that which supports the contract as a whole is required to enforce an arbitration provision. This Court, however, has consistently rejected that argument. See Northcom, Ltd. v. James, 694 So.2d 1329, 1335-36 (Ala.1997), overruled on other grounds by Ex parte McNaughton, 728 So.2d 592, 596-97 (Ala.1998).
[4] We also note that neither Green Tree nor Cooner had a duty to disclose, or explain, the arbitration clause to the Vintsons. See Patrick Home Center, Inc. v. Karr, 730 So.2d 1171, 1174 (Ala.1999); Jim Burke Automotive, Inc. v. Murphy, 739 So.2d 1084, 1087 (Ala. 1999).
[5] "[I]t is neither this Court's duty nor its function to perform a [party's] legal research." City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998).
[6] The Vintsons also argue that they should not be required to arbitrate their claims because, they say, the employee who went over the contract with them did not understand the arbitration provision and would have provided incorrect information to them if they had asked her any question about the provision. However, it is undisputed that the Vintsons did not ask any questions about the arbitration provision. Moreover, there is no indication that the employee, contrary to her normal practice, provided this additional information even though the Vintsons did not ask for it. Accordingly, any misunderstanding the employee may have had about the arbitration provision is irrelevant to the facts of this case.
[7] Even if this Court were to address this issue, it would be hard to see how offering a cash incentive to induce a lawful commercial transaction is a "wrongful act[] or threat[]." Clark v. Liberty Nat'l Life Ins. Co., 592 So.2d 564, 567 (Ala.1992) ("Economic duress consists of: `(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; [and] (3) the absence of any reasonable alternative to the terms presented by the wrongdoer.'" (quoting International Paper Co. v. Whilden, 469 So.2d 560, 562 (Ala. 1985)) (alteration in Clark)).