The plaintiffs Judie Shoemaker and Olen McPherson purchased a mobile home with financing provided by Green Tree Financial Corporation ("Green Tree"). They fell behind in their payments, and Green Tree began telephoning their residence in efforts to collect installments due under the contract. As a result of these telephone calls, the plaintiffs sued Green Tree, alleging "invasion of privacy" and "harassment." Greentree moved to compel arbitration. The trial court, relying on Ex parte Discount Foods,Inc., 711 So.2d 992 (Ala. 1998), denied the motion.
The majority reverses the order denying arbitration. In justifying this result, however, the majority "severely limit[s]"Discount Foods. More specifically, the majority states:
 "At best, this case and [Green Tree Financial Corp. v. Vintson, 753 So.2d 497 (Ala. 1999),] have severely limited the holding in Ex parte Discount Foods. Ex parte Discount Foods can now stand only for the proposition that an arbitration clause should not be enforced to require arbitration of a claim alleging an intentional tort that is in no way related to the underlying transaction that gave rise to the arbitration agreement."
775 So.2d at 151 n. 3 (emphasis added). In this, the majority goes too far.
Even without the majority's "severe limit[ation]" of DiscountFoods, this case is not inconsistent with Discount Foods, a case in which I fully concurred. In fact, Discount Foods is easily distinguishable from this case. That case involved an action by Discount Foods, Inc., against the Supervalu Company and others, alleging that Supervalu had intentionally interfered with business relations between Discount Foods and a third party. Id. at 993. Those relations arose out of the efforts of Discount Foods and the third party "to acquire a lease of commercial real estate." Id. Supervalu sought to compel arbitration, on the basis of provisions "contained in retail agreements . . . between Supervalu and Discount Foods for the supply of groceries and other inventory items to Discount Foods." Id. This Court, very correctly, issued a writ of mandamus directing the trial court to vacate an order compelling arbitration, on the ground that "the disputes involved . . . [were] in no way associated with" the contractual relations between Discount Foods and Supervalu, and that "the arbitration provision found in the retail agreements between Discount Foods and Supervalu was not intended by the parties to force arbitration in regard to allegations of intentional torts that [were] unrelated to their contractual dealings." Id. (emphasis added).[4]
I concur in the judgment in this case, on the ground that the plaintiffs' claims are *Page 153 
related to their contractual dealings with Green Tree. In this connection, I note that the plaintiffs are signatories to the contract with Green Tree. The plaintiffs allege that Green Tree, in telephone conversations with the plaintiff Judie Shoemaker'sdaughter, threatened to "throw her out" and stated that it "hoped the house was full of kids so they could throw them out in the street." Brief of Appellees, at 4. They also allege that Green Tree "contacted Shoemaker's elderly mother on more than twenty occasions and told her to get the Shoemakers out of the house, they were `coming to pull the mobile home.'" Id. They further allege that Green Tree "contacted other persons and discussed [the plaintiffs'] situation with them, causing [the plaintiffs] to suffer shame, stress and humiliation." Id. at 5.
We are not told who these "other persons" are. Additionally, neither the daughter nor the mother is a party in this case. Clearly, Green Tree had no right, under the installment contract, to "harass" anyone other than the signatories. It is entirely unclear, however, how Green Tree's alleged harassment of the daughter, the mother, and the anonymous "others" would support an action by these plaintiffs. Moreover, such "harassment," insofar as it does impact the plaintiffs, "relates to" the installment contract and the plaintiffs' failure to make the installment payments. Consequently, claims regarding it are arbitrable.
But on its face this case is easily distinguishable fromDiscount Foods. Indeed, the majority acknowledges as much when it tacitly concedes that Discount Foods involved "an intentional tort that [was] in no way related to the underlying transaction." 775 So.2d at 151 n. 3. This is not such a case. For these reasons, I concur in the judgment holding that the plaintiffs' claims are arbitrable, but I dissent from the rationale insofar as it purports to "severely limit" the application of DiscountFoods.
[4] The Court's reliance today on Vintson is also misplaced.Vintson contained allegations of (1) fraud in the inducement (2) violations of the Mini-Code, and (3) breach of an alleged agreement to pay off certain debts. This Court held that these claims did "relate to the installment contract" and, consequently, were arbitrable. 753 So.2d at 504-05. Vintson did not address any claims alleging invasion of privacy or harassment. Thus, it is also distinguishable from this present case.