MOORE, Judge.
Macon County (“the County”) and the Macon County Commission (“the Commission”) appeal from the denial of their joint motions to compel arbitration of the claims asserted against them by Brittany Murphy, Willie L. Buchanna, Jr., Willie Cole, Reginald Huffman, Michael Johnson, Jeffery McKinstry, Levi Moore, Edward Stin-son, Erik Whitlow, and Celeste Garrett (hereinafter referred to collectively as “the plaintiffs”).[1] We reverse.

Background,

On January 14, 2010, the plaintiffs each sued American Family Life Assurance Company of Columbus (“AFLAC”), the County, and the Commission asserting claims of breach of contract; negligent, reckless, and intentional fraud; fraudulent deceit, pursuant to Ala.Code 1975, §§ 6-5-103 and -104; fraudulent suppression, pursuant to Ala.Code 1975, § 6-5-102; conversion; breach of fiduciary duty; bad faith; and common-law negligence and/or wantonness.
The plaintiffs alleged that, as of July 2007, they were employed by the County or the Commission; that, at various times, AFLAC had offered the employees of the County and the Commission a supplemental insurance policy; that the County and the Commission had agreed to deduct the insurance premiums due for the AFLAC insurance policies from its employees’ payroll checks; and that the County and the Commission had agreed to remit those premiums to AFLAC on behalf of the employees, including the plaintiffs. The plaintiffs further alleged that, beginning at varying times, the County and/or the Commission had deducted amounts for their insurance premiums from their paychecks but that, beginning in 2007, the County and/or the Commission had failed to remit *1095 all the deducted amounts to AFLAC. The plaintiffs also alleged that they discovered in 2009 that their insurance policies with AFLAC had lapsed due to nonpayment of premiums, prompting them to file their respective complaints.
On March 3, 2010, AFLAC moved to compel arbitration of the plaintiffs’ claims and to stay the trial-court proceedings or, alternatively, to dismiss those proceedings. AFLAC relied on the express language of an arbitration agreement, which each of the plaintiffs had executed along with his or her respective application for the AF-LAC policy. Those arbitration agreements state, in pertinent part:
“I agree that binding arbitration will be used to resolve the following claims, disputes or lawsuits:
“1. Any and all claims, disputes or lawsuits that I have concerning my AFLAC policy; and/or
“2. Any claims, disputes or lawsuits that I have concerning any relationships that my AFLAC insurance policy creates; and/or
“3. Any claims, disputes or lawsuits concerning the validity of this arbitration agreement; and/or
“4. Any and all claims, disputes or lawsuits that I have that come up from the proposed sale of the policy by any agent or employee of AFLAC, including any allegation of fraud or improper act.
[[Image here]]
“.... Both I and AFLAC agree and understand that all disputes arising under law, whether made by the courts or the legislature or any other law which includes but is not limited to all contract, tort and third-party disputes, will be decided by use of binding arbitration.”
In support of its motion, AFLAC submitted the affidavit of Virgil R. Miller, who was employed with AFLAC as vice president of client services. In his affidavit, Miller established that AFLAC is a corporation organized and existing under the laws of the State of Nebraska; that AF-LAC maintains its principal place of business in Georgia; that AFLAC engages in the sale of supplemental insurance policies in all 50 states in the United States; that claims on AFLAC policies are processed in Georgia; and that premiums paid by the plaintiffs were sent from Alabama to the corporate headquarters in Georgia.
On March 5, 2010, the County and the Commission also filed joint motions to compel arbitration of the plaintiffs’ claims against them. The County and the Commission relied on the arbitration agreement executed by the plaintiffs in conjunction with their insurance applications; the County and the Commission also relied on the other documentation submitted by AF-LAC in support of its motions to compel arbitration. The plaintiffs opposed the joint motions to compel arbitration filed by the County and the Commission.
On November 5, 2012, the trial court granted AFLAC’s motion to compel arbitration in each plaintiffs case, and, on December 26, 2012, the trial court denied the joint motion to compel arbitration filed by the County and the Commission in each case. The County and the Commission timely filed their notices of appeal.

Standard of Review

“ ‘This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala.2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbi *1096 tration and proving that the contract evidences a transaction affecting interstate commerce. Id. “[A]fter a mo- . tion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (opinion on application for rehearing).’ ”
Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala.2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000)).

Analysis

In Green Tree Financial Corp. of Alabama v. Vintson, 753 So.2d 497, 501-02 (Ala.1999), this Court stated:
“Section 2 of the Federal Arbitration Act (‘FAA’) provides that ‘[a] written provision in any ... contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable.’ 9 U.S.C. § 2. Moreover, the Supreme Court of the United States has stated that the FAA establishes a strong federal policy favoring arbitration. Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (the FAA ‘establishes that, as a matter of federal law, any doubts concerning the scope of arbi-trable issues should be resolved in favor of arbitration’). Accordingly, trial courts are required to stay or dismiss proceedings and to compel arbitration when the parties have entered into a valid contract containing an arbitration agreement, and a trial court’s denial of a motion to compel arbitration is subject to appeal. See, e.g., Patrick Home Center, Inc. v. Karr, 730 So.2d 1171, 1172 (Ala.1999).”
As the parties seeking to compel arbitration, the County and the Commission bore the initial burden of proving the existence of a contract calling for arbitration and proving that the contract evidenced a transaction affecting interstate commerce. In granting AFLAC’s motions to compel arbitration of the plaintiffs’ claims, the trial court must have found that the insurance applications and policies at issue evidenced transactions in interstate commerce, as required by the FAA.
In seeking to compel arbitration of the claims asserted against them, the County and the Commission relied on the same evidence presented by AFLAC to establish that the applications for insurance and the resulting insurance policies bore the necessary nexus with interstate commerce. On appeal, the County and the Commission reassert that the necessary nexus with interstate commerce exists; the plaintiffs have not disputed that assertion. We, therefore, conclude that the County and the Commission met their burden of proof as to the interstate-commerce issue.
We next address whether the County and the Commission sufficiently established that the existence of a contract calling for arbitration of the claims asserted by the plaintiffs against them. The County and the Commission assert that the language of the arbitration agreements is broad enough to encompass the plaintiffs’ claims against them and to allow them to invoke the arbitration provision, even though the County and the Commission are not signatories to the arbitration agreements. In their appellees’ brief, the plaintiffs argue that the arbitration agreements are not broad enough to encompass their claims against the County and the Commission because they do not expressly *1097 refer to the County or the Commission and the language in the agreements is too narrow in scope to encompass any claims but those asserted against AFLAC.
We recognize that arbitration is a matter of contract and that, with certain limited exceptions, i.e., a third-party-beneficiary theory or a theory of equitable es-toppel or the intertwining of claims, the general rule is that a party may not be compelled to arbitrate a dispute unless he or she has agreed to do so. See Ex parte Cain, 838 So.2d 1020, 1026 (Ala.2002); and Ex parte Lovejoy, 790 So.2d 933, 937 (Ala.2000).
In Green Tree, supra, our supreme court stated:
“Whether an arbitration provision encompasses a party’s claims ‘is a matter of contract interpretation, which interpretation is guided by the intent of the parties, and which intent, absent ambiguity in the clause, is evidenced by the plain language of the clause.’ Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102, 110 (Ala.1995).”
753 So.2d at 505. Thus, we review the language of the arbitration agreements and the allegations of the plaintiffs’ complaints to determine if their claims against the County and the Commission fall within the plain language of their arbitration agreements or if one of the limited exceptions to the general rule recognized by our supreme court applies.
In connection with their applications for an AFLAC insurance policy, the plaintiffs each executed an arbitration agreement requiring them to arbitrate the following:
“1. Any and all claims, disputes, or lawsuits that I have concerning my AFLAC policy; and/or
“2. Any claims, disputes or lawsuits that I have concerning any relationships that my AFLAC insurance policy creates; and/or
“3. Any claims, disputes or lawsuits concerning the validity of my arbitration agreement; and/or
“4. Any and all claims, disputes or lawsuits that I have that come up from the proposed sale of the policy by any agent or employee of AFLAC, including any allegation of fraud or improper act.
[[Image here]]
“.... Both I and AFLAC agree and understand that all disputes arising under law, whether made by the courts or the legislature or any other law which includes but is not limited to all contract, tort and third party disputes, will be decided by the use of binding arbitration.”
In their complaints, the plaintiffs alleged that they “purchased said insurance products from the Defendant AFLAC by and through its agents and servants, the County and the Commission, [and that] the [plaintiffs were] told that the premiums for said coverage would be payroll deducted from the [plaintiffs’] paycheck[s] and remitted by the County and the Commission to Defendant AFLAC.” The plaintiffs alleged that the County and the Commission were liable because they had breached their agreement or otherwise acted wrongfully or fraudulently “while acting as agents, servants, employees and/or representatives of Defendant AFLAC ... for the collection and remission of insurance premiums.”
The case of ECS, Inc. v. Goff Group, Inc., 880 So.2d 1140 (Ala.2003), addresses issues substantially similar to the issues presented in these consolidated appeals. In ECS, Inc., Goff Group, Inc., sued ECS, Inc., and related parties (hereinafter referred to collectively as “ECS”), alleging fraud, tortious interference with a con *1098 tractual/business relationship, the tort of outrage, conspiracy, unfair competition, violation of trade secrets, conversion, and “tortious training and supervision.” Id. at 1143. Goffs claims were based on a business arrangement involving Goff, ECS, and certain insurance companies. Goff and the insurance companies were parties to a contractual agreement, which included an arbitration provision. Id. at 1143. Although ECS was involved in the business arrangement — Goff forwarded collected premiums to ECS which then forwarded a certain portion of those premiums to the insurance companies — ECS was not a party to the contract or to the arbitration agreement. Id.
ECS moved to compel arbitration of Goffs claims, and the trial court denied that motion. Id. at 1145. On appeal, our supreme court concluded that ECS was entitled to invoke the arbitration agreement, despite its status as a nonsignatory, because the language of the arbitration agreement was not so restrictive as to preclude arbitration of the claims asserted against ECS by Goff, Goffs claims against ECS arose out of the business contract between Goff and the insurance companies, Goffs claims against ECS were intertwined with its claims against the' other signatories to the arbitration agreement, and Goffs claims against the other signatories would be resolved in arbitration and, as a result, Goffs claims against ECS must also be resolved in arbitration. Id. at 1146-48.
As in ECS, Inc., the language of the arbitration agreements at issue in these cases is not so restrictive as to preclude arbitration of the plaintiffs’ claims against the County and the Commission. A summary review of the complaints reveal that the claims asserted by the plaintiffs against the County and the Commission concern the AFLAC insurance applications and policies, clearly relate to relationships created by the AFLAC policies, and clearly relate to the proposed sale of policies by an alleged AFLAC agent and include allegations of fraud and improper actions; the plaintiffs’ claims against the County and the Commission also could be characterized as third-party disputes arising from the sale of AFLAC insurance policies. Thus, the language of the arbitration agreements is not so restrictive as to preclude arbitration of the claims asserted against the County and the Commission, even though the County and the Commission are not signatories to those agreements.
Also similar to the factual scenario in ECS, Inc., supra, the claims asserted against the County and the Commission arise out of the plaintiffs’ underlying contracts with the signatory to the arbitration agreements, i.e., the plaintiffs’ claims against the County and the Commission arise out of the plaintiffs’ applications for insurance with AFLAC and the resulting insurance policies issued by AFLAC. Moreover, the plaintiffs’ claims against the County and the Commission are intertwined with their claims against AFLAC because those claims allege that the County and the Commission were, at all relevant times, acting as AFLAC’s agents. We fail to see how the plaintiffs’ claims against the County and the Commission can be resolved without reference to the plaintiffs’ applications for insurance with AFLAC, the policies issued by AFLAC to the plaintiffs, and the role played by the County and the Commission in obtaining and maintaining those policies.
We agree with the County and the Commission that the language of the arbitration agreements is not ambiguous and that it is broad enough to encompass the plaintiffs’ claims asserted against them. Because the plaintiffs’ claims against AFLAC *1099 will be resolved in arbitration and because those claims are intertwined with the plaintiffs’ claims against the County and the Commission, the plaintiffs must also resolve their claims against the County and the Commission in arbitration. We, therefore, reverse the trial court’s denial of the motions to compel arbitration filed by the County and the Commission. We remand the causes for entry of an order consistent with this opinion.
2120755 — REVERSED AND REMANDED WITH INSTRUCTIONS.
2120756 — REVERSED AND REMANDED WITH INSTRUCTIONS.
2120757 — REVERSED AND REMANDED WITH INSTRUCTIONS.
2120758 — REVERSED AND REMANDED WITH INSTRUCTIONS.
2120759 — REVERSED AND REMANDED WITH INSTRUCTIONS.
2120760 — REVERSED AND REMANDED WITH INSTRUCTIONS.
2120761 — REVERSED AND REMANDED WITH INSTRUCTIONS.
2120762 — REVERSED AND REMANDED WITH INSTRUCTIONS.
2120763 — REVERSED AND REMANDED WITH INSTRUCTIONS.
2120764 — REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. All of the cases have been consolidated for purposes of appeal.