# W. T. Rawleigh Medical Company
# v. Wilson, *et al.*

## *Assumpsit.*

(Decided December 7, 1912. Rehearing denied January 13, 1913. 60 South. 1001.)

1. *Principal and Surety; Contract; Distinguished from Guaranty.*—Where the contract recited that the persons who executed it agreed jointly and severally in consideration of credit being extended to their principal, to be responsible for the payment of any balance due a seller, and for the faithful performance by the principal of his contract, waiving acceptance and notice and agreeing that an extension of time or change of territory should not release them from liability, such signors were guarantors only and not sureties.

[W. T. Rawleigh Medical Company v. Wilson, et al.]

2. *Same; Action by Obligee; Defense.*—Although the obligee did not know of the condition, it was a good defense to an action on the contract after its delivery in violation of the condition that the surety on a non-negotiable paper delivered it to the principal under an agreement that it should not be delivered to the obligee or become binding until signed by another proposed surety; the obligee dealing with the principal, who was agent of the surety, being at its peril as to the extent of the authority of such agent, and such knowledge or notice being .imputed to it as would have been gained by such inquiry.

3. *Same.*—Where a surety on a non-negotiable instrument is induced to sign the same by misrepresentations of the principal as to its contents, the instrument cannot be enforced against him although the principal was not the obligee's agent, and the obligee knew nothing of the false representations when it accepted the instrument.

4. *Same: Plea; Sufficiency.*—In an action against a surety a plea alleging merely that the principal induced the surety to sign the contract by false representation, was demurrable for a failure to allege that the surety did not read the contract.

5. *Pleading; Verification; Necessity.*—Section 5332, Code 1907, requires pleas of non est factum to be verified, and a plea alleging that the contract of suretyship was secured by fraud and delivered to the obligee in violation of a stipulated condition, was in effect a special plea of non est factum requiring verification.

6. *Estoppel; Plea.*—The fact that sureties suffered the principal debtor to deliver the contract in violation of the condition that the paper was not to be delivered to the obligee until certain conditions were complied with. is a matter of estoppel which need not be negatived in a plea setting up the violation .of such a condition; such matter of estoppel being available to the obligee only when presented by replication .in avoidance of such plea.

APPEAL from Marion Circuit Court.

Heard before Hon. C. P. ALMON.

Action by the W. T. Rawleigh Medical Company against Emit I. Wilson and others for breach of contract. From a judgment for defendants, plaintiff appeals. Affirmed.

Count 4 is as follows:

"The plaintiff further claims of defendant Emit I. Wilson, as principal, and Ollie E. Harris, Aaron M. Sullens, and George M. Burleson, as sureties, the said sum of $447.09 as damages under the terms of the following contract entered into by the plaintiff and the defendants hereto, which said contract is. in the following language, to-wit:

" 'Contract: "Whereas, E. I. Wilson, of Chalk Bluff, Alabama, desires to purchase of the W. T. Rawleigh Medical Company of Freeport, Illinois, on credit and at wholesale prices to sell again to consumers, medicines, extracts, spices, soaps, toilet articles, perfumes, stock and poultry preparations, and other goods manufactured and put up by it, paying his account for such goods in installments as hereinafter provided: Therefore, he hereby agrees to sell no other goods than those sold him by said company, to sell all such goods at regular retail prices to be indicated by it, and to have no other business or employment. He further agrees to pay said company for all goods purchased under this contract the current wholesale prices of such goods by remitting in cash each week to said company an amount equal to at least one-half the receipts from his business until his account is balanced, and for that purpose as evidence of good faith he shall submit to said company weekly reports of his business; provided, however, if he pays his account in full on or before the 10th day of each month he is to be allowed a discount of three per cent. (3%) from current wholesale prices. Upon termination of this contract from any cause or by either party, he further agrees to settle in cash within a reasonable time the balance due said company on account. Unless prevented by strikes, fires, accidents, or causes beyond its control said company agrees to sell and deliver on board cars at place of shipment, his reasonable orders, provided his account is in satisfactory condition, and to charge all goods shipped him under this contract to his account at current wholesale prices; also to notify him promptly of any change in wholesale or retail prices. Said company further agrees to furnish him free of charge on board cars at place of shipment, a reasonable amount of first-class advertising matter,

report and order blanks, and printed return envelopes for his use in conducting his business, also to give him, free of charge, after he has begun work, instructions and advice, through letters, bulletins, and booklets, as to the best methods of selling its products to consumers. This contract is subject to acceptance at the home office of the company and is to continue in force only so long as his account and the amount of his purchases are satisfactory to said company; provided, however, that said E. I. Wilson or his guarantors may be released from this contract at any time by paying in cash the balance due said company on account. Dated at Freeport, Illinois, September 28, 1909.

" '[Signed]

" 'The W. T. Rawleigh Medical Company,

" 'By W. T. Rawleigh, President.

" 'Emit I. Wilson.

" 'In consideration of the W. T. Rawleigh Medical Company extending credit to the above-named person we hereby guarantee to it, jointly and severally, the honest and faithful performance of the said contract by him, waiving acceptance and all notice and agree that any extension of time or change of territory shall not release from liability herein.

| Names. | Occupations. | P. O. Addresses. |
| --- | --- | --- |
| Ollie E. Harris | Farming | Fernando, Ala. |
| Aaron M. Sullens | Farming | Chalk Bluff, Ala. |
| George M. Burleson | Farming | Bear Creek, Ala., |

" 'The above guarantors are entitled upon request at any time to a statement of salesman's account.'

"And plaintiff further alleges that, under the terms and conditions of said contract, it sold the said defendant Emit I. Wilson medicines, extracts, spices, soaps,

toilet articles, perfumes, stock and poultry preparations, and other goods manufactured and put up by it from the time of the execution of said contract up to the 21st day of October, 1910, to the amount of $692.15, and that there yet remains a balance due on account in the said sum of $447.09, together with the interest thereon from said 21st day of October, 1910, and that said sum is still due and unpaid. And plaintiff further alleges that, although it has complied with the terms and conditions of said contract on its part, the said defendant Emit I. Wilson wholly failed to comply with the terms of said contract on his part in this: That he failed to remit in cash each week to the plaintiff an amount equal to at least one-half the receipts from his business until his account was balanced, but that the same now remains unbalanced with an indebtedness due from said Emit I. Wilson to the plaintiff in the sum of $447.09, with the interest thereon, for which he and the other defendants herein are severally and jointly liable, hence this suit."

The defendant Sullens filed the following pleas:

(1) The defendant A. M. Sullens, for answer to the complaint filed in this case, says that at the time of the execution of the contract sued on in this case one E. I. Wilson, who is the principal obligor in said bond or contract, represented to defendant that he was signing a recommendation of the said Wilson to the plaintiff company, which representation was false and fraudulent, and by means of such representation this defendant was deceived and induced to execute the contract.

"(2) The defendant says that he signed his name to said contract or bond sued on with the distinct agreement between him and the said E. I. Wilson, who was the principal obligor, that the said bond or contract should not be delivered to the plaintiff until signed by

J. J. Lolley, and the defendant says that the said E. I. Wilson delivered said bond or contract without getting the said J. J. Lolley to sign it. Wherefore, defendant is not bound thereby."

The demurrers filed to plea 1 are as follows: "It is no answer to the complaint; does not allege that E. I. Wilson was the agent of plaintiff, and authorized to bind it in the premises. For aught that appears, plaintiff is not bound by any statement or recommendation made or alleged to have been made by the said E. I. Wilson." To the second plea the same demurrers as to the first plea, with these additional grounds: "It is not alleged that plaintiff had any notice or knowledge of the conditions set forth in said plea, and for aught that appears plaintiff had no notice or knowledge of any agreement so alleged to have been made by the said Wilson. It is not shown that Wilson was authorized to bind the plaintiff by said agreement. It is not shown that Wilson was the agent of plaintiff, and that defendant had the right to rely upon any agreement so made or alleged to have been made. It is not shown that there was a fraudulent collusion between the plaintiff and the principal obligor, Wilson, to charge the defendant."

HILL, HILL, WHITING & STERN, and E. B. & K. V. FITE, for appellant. If the surety permits the delivery of a bond to the obligee before the conditions have been complied with, he is chargeable with notice of its delivery, and is estopped from setting up the non-performance of such conditions in avoidance of his liability.— *Wright v. Lang,* 66 Ala. 389; *Smith v. Kirkland,* 81 Ala. 347. An agency limited by the terms of the contract was created when the agreement was accepted by the company, and until chargeable with notice of the

[W. T. Rawleigh Medical Company v. Wilson, et al.]

condition, the obligee would not be bound by it.—5 Cyc. 736; 16 Wall. 1; 179 U. S. 591; 32 Ind. 313; 84 N. W. 105; 69 N. W. 357; 98 N. W. 705; 83 Pac. 6; 30 N. W. 343; 14 Am. Rep. 389; 72 Minn. 187; 34 Am. Rep. 780; 45 L. R. A. 332; 75 N. W. 632. The pleas should have shown that the parties making the representation were the agent of the plaintiff.—*Beck v. Houppert,* 104 Ala. 503; *Brown v. I. Co.,* 86 Ala. 159; see in this connection *Troy G. Co. v. Potter,* 139 Ala. 359; *Phillips, et al. v. Wild Bros.,* 144 Ala. 545.

DAVIS & FITE, for appellee. Plea 2 was not subject to demurrer.—*Beck v. Houppert,* 104 Ala. 503. Plea 3 presented a complete defense.—*White Sew. Mach. Co. v. Saxon,* 121 Ala. 399. Plea 4 was a plea of non est factum duly sworn to, and no evidence was introduced showing the execution of the contract, and hence, the defendant is entitled to the affirmative charge.

THOMAS, J.—The reporter will set out count No. 4 of the complaint, which fully states plaintiff's case; also pleas No. 1 and No. 2 of defendant A. M. Sullens, together with the demurrers to said two pleas. The overruling of these demurrers by the trial court, and an overruling by it of like demurrers to like pleas filed by the other defendants O. E. Harris and Geo. M. Burleson, which are not necessary to be set out, raises the question as to the only erorrs here assigned.

It will be observed that in the pleading as set out both sides—plaintiff and defendants—treated the defendants Sullens, Harris, and Burleson as sureties for the defendant Wilson on the contract set out in said count No. 4 of the complaint; whereas, they were only guarantors as decided by this court on a construction of a like contract in the case of *W. T. Rawleigh Medical*

*Co. v. Tarpley et al.,* 5 Ala. App. 412, 59 South. 512.
However, so far as the principles of law involved on this
appeal are concerned, we discover no substantial differ-
ence between sureties and guarantors, and will treat the
case—as the respective parties to the litigation and
their counsel have done all through the proceedings,
including briefs filed here—on the theory that said
named defendants are sureties for the defendant Wilson
on said contract.

We shall deal first with the sufficiency of the second
plea as a defense, tested by the demurrers. In *Smith
v. Kirkland,* 81 Ala. 350, 1 South. 277, Judge SOMER-
VILLE, speaking for our Supreme Court on the same
question differently raised, says: "It has been long
settled in this state by a line of decisions which seem
to be supported by the weight of authority that it is a
good defense to an action on a bond that a defendant,
who is a surety, intrusted the bond to the principal ob-
ligor as an escrow, with authority to deliver it only on
the express condition that other named persons should
join as sureties in its execution prior to such delivery,
and that the instrument was delivered to the obligee in
violation of this condition.—*Guild v. Thomas,* 54 Ala.
414 [25 Am. Rep. 703], and authorities cited there;
*Bibb v. Reid,* 3 Ala. 88. There are two established modi-
fications of this rule:   (1) It does not apply to com-
mercial paper which has come into the hands of a bona
fide purchaser before maturity, who is without notice
of the condition.—*Marks v. First Nat. Bank,* 79 Ala. 550
[58 Am. Rep. 620].   (2) It does not apply where the
surety having knowledge or notice of the delivery of the
bond suffers the principal to act under it to the preju-
dice of the obligee, so as to waive the condition, and
thus estop the surety from insisting on the defense.—
*Wright v. Lang,* 66 Ala. 389."

In a later case—*White Sewing Machine Co. v. Saxon*, 121 Ala. 404, 405, 25 South. 784, 787—McClellan, C. J., enlightened us as to the reasons which support the main proposition, to-wit: "The surety is under no obligation to sign the bond at all. His signature is his voluntary act. Nor is he under any obligation to deliver a bond after having signed it. Signing for the accommodation of the principal obligor, he may put such limitations and conditions upon his favor as seem to him proper or to his interest. The whole matter is at large with him; and, having constituted the principal obligor his agent to deliver the bond, he may impose whatever conditions he may choose upon the act of his agent. The condition may be quite onerous, it may be very difficult of performance; it may involve uncertainty as to what is necessary to performance; but, whatever it is or may involve, its imposition is within his clear and unfettered right. The thing to be done not being at all obligatory on him, he can decline to do it absolutley, and he may do it upon whatever conditions, capricious or otherwise, he may elect to impose. As he may subscribe upon condition that A. B. and C. D. shall also subscribe, he may make the obligation of his signature depend upon the subscription of a hundred or a thousand other named persons. Such a condition would be more difficult of performance than a condition that four or five good men should subscribe as sureties, and more unreasonable, if either could be said to be unreasonable. If any condition is deemed too onerous, or unreasonable, or impossible even of performance, the holder in escrow is not thereby authorized to deliver to the obligee. He has no authority whatever to deliver until the condition, whatever it may be, has been complied with; and the obligee who knows that the principal is acting as agent of the surety in making delivery is put on notice that the con-

dition was imposed and has not been performed. And he, the obligee, will not be heard to say that the surety should not have imposed such a condition, * *. * since the surety, having the undoubted right to decline to sign at all, must have an equally undoubted right to determine under what circumstances and to what extent he will bind himself." See, also, *Sharp v. Allgood*, 100 Ala. 183, 14 South. 16.

Whatever may be the rule in other jurisdictions, under these authorities, which have never been questioned, so far as we can find, by any later adjudications of our own Supreme Court, we are bound to hold the second plea of the sureties, as set out in the report of the case, sufficient, as against the demurrers aimed at it. It is clear that in such a plea it is not necessary to allege that Wilson, the principal obligor, was the agent of plaintiff, the obligee, in order to excuse the sureties from liability for his acts. He was, as the plea imports, the agent of the sureties to deliver the bond or contract, but that only upon certain conditions named in the plea. As such agent for them he dealt with the plaintiff in delivering such bond or contract; and plaintiff in thus dealing with the known agent of another party was acting at its peril—at least as to a non-commercial paper, as this here involved is—and was bound to inquire and ascertain the extent of that agent's authority to deliver. Hence, it was also not necessary to allege in said plea that plaintiff had knowledge or notice of the conditions upon which the instrument was to be delivered to plaintiff, the obligee, because the law, as said, imposed upon it the duty of finding out, and imputes to it such knowledge or notice as it would have gained by proper inquiry. Authorities supra; *Sharp v. Allgood*, 100 Ala. 183, 14 South. 16, and authorities there cited.

This plea, as well as the first plea, was in effect a

special plea of non est factum, and each was, therefore, defective in not being sworn to, but this point seems not to have been raised as to either of them.—Code 1907, § 5332; *Campbell v. Larmore,* 84 Ala. 502, 4 South. 593.

If the sureties had knowledge of the delivery of the bond or contract to plaintiff, in violation of the conditions imposed by : them upon its delivery, and with such knowledge or notice suffered the principal to act under it to the prejudice of the plaintiff obligee, they would, of course, as hereinbefore shown, be estopped from pleading the facts relied on in their plea. But such matters of estoppel do not have to be negatived in their plea. The plaintiff could only get the benefit of such an estoppel by a replication setting it up in avoidance of the sureties' plea.

As to the first plea and demurrers thereto, it is sufficient to say that the rule of law, long established in this state and followed by an unbroken line of authorities, both new and old, is: "Where a person signs an instrument without reading it, or if he cannot read, without asking to have it read to him, the legal effect of the signature cannot be avoided by showing his ignorance of its contents, in the absence of some fraud, deceit, or misrepresentations having been practiced upon him; but the rule is otherwise, and the instrument will be held void, where its execution has been obtained by a misrepresentation of its contents—the party signing a paper which he did not know he was signing, and did not really intend to sign. It is immaterial, in the latter aspect of the case, that the party signing had an opportunity to read the paper, for he may have been prevented from doing so by the very fact that he trusted to the truth of the representations made by the other party with whom he was dealing."—*Burroughs v. Pacific Guano Co.,* 81 Ala. 258, 1 South. 213; *Leonard v. Roe-*

*buck,* 152 Ala. 315, 44 South. 390; *Folmar v. Siler,* 132
Ala. 303, 31 South. 719; *Western Ry. of Ala. v. Arnett,*
137 Ala. 425, 34 South. 997; *Tillis v. Austin,* 117 Ala.
262, 22 South. 975; *Bank of Guntersville v. Webb,* 108
Ala. 132, 19 South. 14; *Beck v. Houppert,* 104 Ala. 503,
16 South. 522, 53 Am. St. Rep. 77; *Kinney v. Ensminger,*
87 Ala. 340, 6 South. 72; *Campbell v. Larmore,* 84 Ala.
501, 4 South. 593; *Pacific Guano Co. v. Anglin,* 82 Ala.
497, 1 South. 852; *Johnson v. Cook,* 73 Ala. 537; *Foster
v. Johnson,* 70 Ala. 251; *Goetter v. Pickett,* 61 Ala. 387;
and other authorities of this state cited in the above
cases.

The counsel of appellant, plaintiff below, practically
concede this general rule; but insist that it applies to
exempt from obligation on the instrument the parties
who signed it on false representations as to its contents
only when those false representations were made by the
payee or obligee in the instrument or his agent or some
one in collusion with such payee or obligee, and that if
such false representations were made by any other per-
son than such payee or obligee or his agent, or some one
in collusion with such payee or obligee, and neither had
any notice or knowledge of them, as contended in this
case, then the payors or obligors are liable, notwith-
standing they were induced and deceived into signing
it, without reading it, upon the false representations
made by some other party (the principal obligor, in this
case) as to its contents. We have carefully gone through
all the cases we could find in this state dealing at all
with the general rule, and find that in none of them
has the particular question ever been dealt with; but we
do find that one exception to it has been recognized.
This exception, however, is of such a class as to im-
pliedly exclude or deny the exception here contended
for. It has been held that, where a commercial paper

has been transferred by the original payee to an inno-cent holder for value in due course, a surety on it, who signed it without reading it, induced thereto by false representation as to its contents made by the principal debtor, is bound thereby in favor of such bona fide holder.—*Pacific Guano Co. v. Anglin,* 82 Ala. 497, 1 South. 852. And it may be that he would be bound even in favor of the original payee of such a paper, if the lat-ter took it in good faith, for a valuable consideration, etc., without notice or knowledge of the fraud prac-ticed by the principal debtor on the surety in order to secure the surety's signature. This question is now pending before us for decision in the case of *Stone v. Goldberg & Lewis,* 6 Ala. App. 249, 60 South. 744, on appeal from Shelby county; and *Marks v. First Na-tional Bank,* 79 Ala. 550, 58 Am. Rep. 620, is there urged upon us as an authority. Whatever may be the decision in that case, it cannot affect this; for the paper here in controversy is not a commercial paper.

The defense set up in the first plea, now being con-sidered, is not different in principle from that set up in the second plea, which we have hereinbefore considered and held good as against the same demurrers aimed at this. The authorities cited as sutaining our view there, equally support it here—that the defense that the sure-ties signed the contract or bond, without reading it, in-duced thereto by the false representations as to its con-tents made by the principal, Wilson, is available to them in a suit by the payee, notwithstanding the said Wilson was not the agent of the payee in so doing, notwith-standing said payee was not in collusion with him, and notwithstanding said payee knew nothing of said false representations at the time he accepted the bond or contract.—*Sharp v. Allgood,* 100 Ala. 183, 14 South. 16, and other authorities supra.

[Woodmen of the World v. Wright.]

Hence, the lower court did not err in overruling the demurrers to the pleas.

The first plea was demurrable for failing to allege that defendants did not read the contract, but this point was not raised.—*Tillis & O'Neal v. Austin,* 117 Ala. 263, 22 South. 975.

The judgment of the lower court is therefore affirmed. Affirmed.