776 So.2d 777 (2000)
HAROLD ALLEN'S MOBILE HOME FACTORY OUTLET, INC.
v.
Frances B. EARLY and Yolanda L. Early.
Southern Energy Homes, Inc.
v.
Frances B. Early and Yolanda L. Early.
1981337, 1981375.
Supreme Court of Alabama.
June 30, 2000.
*779 W. Beatty Pearson of Pearson, Cummins & Hart, Spanish Fort, for appellant Harold Allen's Mobile Home Factory Outlet, Inc.
John Martin Galese and Jeffrey L. Ingram of Galese & Ingram, P.C., Birmingham, for appellant Southern Energy Homes, Inc.
Joseph C. McCorquodale III and Jacqualyn S. Bradley of McCorquodale & McCorquodale, Jackson, for appellees.
SEE, Justice.
Harold Allen's Mobile Home Factory Outlet, Inc. ("Harold Allen"), and Southern Energy Homes, Inc. ("Southern Energy"), defendants in an action pending in the Clarke County Circuit Court, separately appeal from the trial court's order denying their motions to compel arbitration. We hold that Harold Allen is entitled to compel arbitration of the claims filed by the plaintiffs, Frances B. Early and her daughter Yolanda L. Early, because the Earlys failed to present substantial evidence of fraudulent inducement of the arbitration agreement with Harold Allen, and we hold that Southern Energy is entitled to compel arbitration of the Earlys' claims based on the arbitration provision in its written warranty. Therefore, in both appeals, we reverse and remand.

*780 I.
In March 1996, the Earlys purchased from Harold Allen a mobile home that had been manufactured by Southern Energy. In connection with the purchase, the Earlys signed a document labeled "Retail Installment Contract, Security Agreement, Waiver of Trial by Jury, and Agreement to Arbitration or Reference or Trial by Judge Alone"; and they signed with Harold Allen a separate document labeled "Agreement for Binding Arbitration and Waiver of Jury Trial." The separate arbitration agreement provides, in pertinent part, that the Earlys and Harold Allen agree to arbitrate "all claims and disputes including, but not limited to all contract disputes, claims of fraud, misrepresentation, breach of warrantyexpress or implied, negligence, wantonness and all torts of every type and nature in any way arising out of the sale and purchase of the mobile home."[1] In connection with their purchase of the mobile home, the Earlys received a "Home Owner's Manual" from Southern Energy. That manual includes a limited, written warranty and an arbitration provision.[2]
The Earlys allege that they began experiencing problems with the mobile home. In March 1998, they sued Harold Allen and Southern Energy. The Earlys asserted claims alleging intentional or reckless fraudulent misrepresentation, breach of express warranty, breach of implied warranties of merchantability and habitability, negligent manufacture, negligent delivery, and negligent installation. The Earlys also sought a judgment declaring that the arbitration provision in Southern Energy's written warranty was void and unenforceable. Harold Allen and Southern Energy each moved to compel arbitration. Harold Allen based its motion on the separate arbitration agreement; Southern Energy based its motion on the arbitration provision in its written warranty and on the separate arbitration agreement. In response, the Earlys moved to amend their complaint to seek a declaration that both the arbitration provision in the installment agreement and the separate arbitration agreement were void and unenforceable. After conducting a hearing, the trial court granted Harold Allen and Southern Energy's motions to compel arbitration.[3]
*781 The day after the trial court entered its order granting Harold Allen and Southern Energy's motions to compel arbitration, the Earlys each filed an affidavit in which they stated that a salesman for Harold Allen who had negotiated the sale of the mobile home had told them that the arbitration provision in the sales documents meant that if the Earlys defaulted in their installment payments, then Harold Allen "would not take [them] to court." Within 30 days, the Earlys filed a motion to alter, amend, vacate, or "reconsider" the trial court's order granting the motions to compel arbitration. The Earlys offered their previously filed affidavits in support of their motion. The trial court granted the Earlys' motion and vacated its order compelling arbitration, stating, with respect to Harold Allen, that the Earlys "claim fraud in the inducement of the arbitration agreement and the Court, not an arbitrator, must decide this issue," and stating, with respect to Southern Energy, that "[t]he Magnuson-Moss Act prohibits the enforcement of a binding arbitration clause in a written warranty." Harold Allen and Southern Energy appeal from the order vacating the order compelling arbitration. Thus, in effect, they are appealing from an order denying arbitration.

II.
A direct appeal is the proper procedure by which to seek review of a trial court's order denying a motion to compel arbitration. See Crimson Industries, Inc. v. Kirkland, 736 So.2d 597, 600 (Ala.1999); A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala.1990); see also Federal Arbitration Act ("FAA"), 9 U.S.C. § 16 (1994) (providing that an appeal may be taken from an order denying a motion to compel arbitration). This Court reviews de novo a trial court's denial of a motion to compel arbitration. See First American Title Ins. Corp. v. Silvernell, 744 So.2d 883, 886 (Ala.1999); Crimson Industries, Inc., 736 So.2d at 600; Patrick Home Center, Inc. v. Karr, 730 So.2d 1171, 1171 (Ala.1999). Section 2 of the FAA, 9 U.S.C. § 2, provides in pertinent part:
"A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
Section 2 preempts conflicting Alabama law, in particular, Ala.Code 1975, § 8-1-41(3), thereby making enforceable a predispute arbitration agreement in a contract evidencing a transaction involving interstate commerce. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-74, 277, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 617 (Ala.1997). For FAA preemption to occur, (1) the parties must have entered a valid, written arbitration agreement and (2) the contract in which the arbitration agreement appears must relate to a transaction involving interstate commerce. See Prudential Sec., Inc. v. Micro Fab, Inc., 689 So.2d 829, 832 (Ala. 1997). These appeals concern the first requirementthe validity and enforceability of the arbitration provisions in the "retail installment contract" in the warranty.[4]

A.
In vacating its order compelling arbitration, the trial court held that, with respect to Harold Allen, the Earlys had *782 presented a claim of fraudulent inducement that the court needed to decide. "[W]hen a claim of fraud in the inducement is directed toward the arbitration clause itself, the issue is adjudicated by the court," but "when a claim of fraud in the inducement is directed toward the entire contract, ... the issue is subject to arbitration." Investment Management & Research, Inc. v. Hamilton, 727 So.2d 71, 78 (Ala.1999). The Earlys did not assert in their complaint, as amended, any claim of fraudulent inducement of the arbitration provision in the installment agreement or of the separate arbitration agreement with Harold Allen. In their original complaint, the Earlys sought a judgment declaring that the arbitration provision in Southern Energy's written warranty is void and unenforceable because, they alleged, (1) "no consideration [was] paid"; (2) "[they] did not agree to submit any claims or disputes to binding arbitration; in fact, this was never discussed with [them]"; (3) the arbitration provision "is unilateral in nature, and is not signed by either of [them] or [Southern Energy or Harold Allen]"; (4) "the transaction does not involve interstate commerce"; (5) there was a "lack of mutuality of remedy"; and (6) the arbitration provision "was not any part of the transaction which is made the basis of [the][c]omplaint, nor was it contained in any of the agreements or documents executed by [the Earlys] with regard to the purchase of their mobile home." In their amended complaint, the Earlys sought, additionally, a judgment declaring void and unenforceable the arbitration provision in the installment agreement and the separate arbitration agreement. They alleged the same grounds they had asserted in their original complaint.
We do not interpret the Earlys' allegations, particularly allegations (2) and (6), as stating a claim of fraudulent inducement of the arbitration agreementthat is, as an allegation that they were tricked by misrepresentations into signing the arbitration agreement or the installment agreement. Even if we interpreted the Earlys' allegations as stating a claim of fraudulent inducement, we would have to conclude that they did not present substantial evidence in support of that claim. See Ex parte Perry, 744 So.2d 859, 863 (Ala.1999) (opinion of three Justices) ("A party must provide substantial evidence of fraud in the inducement, particularly related to the arbitration clause, in order to avoid arbitration."). The only evidence presented to support their challenge to the enforceability of the arbitration agreement was their own affidavits.[5] Yolanda Early's affidavit states, in pertinent part:
"I asked the salesman what the arbitration clause meant. I specifically asked him if this only had to do with the situation where I might come into default with a payment and Harold Allen would agree to arbitrate if I defaulted in my payments. The salesman told me that that was what that clause meant. He at no time told me that there was any agreement by me that I would have to arbitrate any claims I had against Harold Allen or the mobile home manufacturer, and when I asked him what this meant, he confirmed my understanding that Harold Allen would not take me to court if I fell behind in my payments. This is what was explained to me concerning arbitration, with regard to this purchase."
*783 Frances Early's affidavit corroborates these statements.[6]
Federal law requires this Court to review under general Alabama contract law the allegations that the Earlys were fraudulently induced to sign the arbitration agreement, and to resolve in favor of arbitration any doubts whether the Earlys' fraudulent-inducement claim is arbitrable. See Quality Truck & Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1167-68 (Ala.1999). The Earlys' fraudulent-inducement claim is governed by the "reasonable-reliance" standard. See Foremost *784 Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997). Under that standard, a person cannot blindly rely on an agent's oral representations to the exclusion of written disclosures in a contract. Ex parte Caver, 742 So.2d 168, 173 (Ala.1999). Thus, the Earlys were required to produce substantial evidence indicating that they reasonably relied on representations by Harold Allen's salesman.
The gravamen of the Earlys' allegations is that Harold Allen's salesman did not fully disclose and adequately explain the separate arbitration agreement. However, Harold Allen had no duty to disclose or explain the arbitration agreement. See Green Tree Fin. Corp. v. Vintson, 753 So.2d 497 (Ala.1999); Patrick Home Center, Inc. v. Karr, 730 So.2d 1171, 1174 (Ala.1999); Green Tree Agency, Inc. v. White, 719 So.2d 1179, 1180 (Ala.1998); see also First Family Fin. Servs., Inc. v. Rogers, 736 So.2d 553, 558 (Ala.1999) ("[W]hen a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract, including an arbitration provision, and will be bound thereby."). Moreover, the separate arbitration agreement clearly discloses both that it is an arbitration agreement and the terms of that agreement. The Earlys presented no evidence indicating that they cannot read, that the salesman prevented them from reading the documents they signed, or that they could not have understood the arbitration agreement had they taken the time to read it. See Green Tree Fin. Corp. v. Vintson, supra. Thus, based on the evidence in the record, one must conclude that the Earlys did not reasonably rely on the salesman's alleged representation about the meaning of the arbitration agreement. To conclude otherwise would allow the Earlys to shut their eyes to the terms of the documents they voluntarily signed and to blindly rely on the salesman's alleged representation.[7] No such doctrine is supported by Alabama's general contract law, and such a doctrine would, therefore, be contrary to the strong federal policy favoring arbitration. See Quality Truck & Auto Sales, Inc., 730 So.2d at 1168. Interpreting the Earlys' allegations as stating a claim of fraudulent inducement of the arbitration agreement, we conclude that the Earlys did not present substantial evidence in support of that claim, and that the trial court therefore erred in vacating on that ground its order compelling arbitration.
The other challenges to the arbitration agreement that the Earlys raise in their amended complaint either are without merit or are not supported by the record.[8] The Earlys signed the arbitration *785 agreement. The arbitration agreement is supported by sufficient consideration: the Earlys agreed, among other things, to arbitrate pursuant to the terms of the arbitration agreement, and, in return, Harold Allen agreed, among other things, to sell the mobile home. See Ex parte McNaughton, 728 So.2d 592, 595-96 & n. 5 (Ala.1998). The Earlys' mutuality-of-remedy argument has previously been rejected by this Court as "simply erroneous." Green Tree Fin. Corp. v. Vintson, supra, 753 So.2d at 504. The Earlys also claim that the issue of "agree[ing] to submit any claims or disputes to binding arbitration... was never discussed with [them]." As stated above, this claim is without merit because Harold Allen had no duty to discuss the written arbitration agreement. Finally, the Earlys claim that the arbitration provision "was not any part of the transaction which is made the basis of [the][c]omplaint, nor was it contained in any of the agreements or documents executed by [the Earlys] with regard to the purchase of their mobile home." This claim, however, is contradicted by the allegations of their complaint that relate to their purchase of the mobile home and by the plain language of the arbitration agreement signed by the Earlys, which clearly states that it is being entered "[a]s part of the consideration for the sale of [the] mobile home."
Accordingly, we hold that the arbitration agreement between Harold Allen and the Earlys is valid and enforceable, and that, pursuant to the terms of that agreement, and in accordance with the FAA, Harold Allen is entitled to compel arbitration of the Earlys' claims.

B.
The Earlys argue that the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (the "Magnuson-Moss Act") precludes Southern Energy from compelling arbitration of their breach-of-express-warranty claims, regardless of whether Southern Energy seeks to compel arbitration based on an arbitration provision in its written warranty or based on an arbitration provision in a separate agreement. Southern Energy argues that the Magnuson-Moss Act does not preclude enforcement of the binding-arbitration provision in the written warranty, relying on the analytical framework established by the Supreme Court of the United States in Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).
In Southern Energy Homes, Inc. v. Lee, 732 So.2d 994 (Ala.1999), this Court, adopting the rationale of the United States District Court for the Middle District of Alabama in Wilson v. Waverlee Homes, Inc., 954 F.Supp. 1530 (M.D.Ala.1997), aff'd, 127 F.3d 40 (11th Cir.1997) (table), and in Boyd v. Homes of Legend, Inc., 981 F.Supp. 1423 (M.D.Ala.1997),[9] "[held] that the Magnuson-Moss Act prohibits the inclusion in a written warranty of a provision calling for binding arbitration." 732 So.2d at 999. Thus, this Court concluded, because the arbitration provision in Southern Energy's written warranty was unenforceable and because "the only arbitration clause [Southern Energy] relie[d] upon appear[ed] in its written warranty," the plaintiffs' breach-of-express-warranty claims, as well as their fraud and breach-of-implied-warranty claims, were not subject to arbitration. Lee, 732 So.2d at 1000. However, in Southern Energy Homes v. Ard, 772 So.2d 1131 (Ala.2000), this Court overruled Lee. Thus, the arbitration provision in Southern Energy's written warranty is enforceable, and Southern Energy is entitled to compel arbitration of the Earlys' claims, in accordance with that provision. *786 Therefore, the trial court erred in refusing to compel arbitration of the Earlys' claims against Southern Energy on the ground that the Magnuson-Moss Act prohibits Southern Energy from enforcing the arbitration provision in its written warranty.

III.
The Earlys failed to present substantial evidence of fraudulent inducement of the arbitration agreement, and the arbitration provision in Southern Energy's written warranty is enforceable. Accordingly, we reverse the trial court's order denying arbitration and remand the case for that court to enter an order consistent with this opinion.
1981337REVERSED AND REMANDED.
1981375REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, BROWN, and ENGLAND, JJ., concur as to Part II.A.
HOUSTON, COOK, LYONS, and JOHNSTONE, JJ., dissent as to Part II.A.
HOOPER, C.J., and MADDOX, LYONS, and BROWN, JJ., concur as to Part II.B.
HOUSTON, COOK, JOHNSTONE, and ENGLAND, JJ., dissent as to Part II.B.
LYONS, Justice (concurring as to Part II.B., but dissenting as to Part II.A.).
I concur in Part II.B., but I dissent from Part II.A. I join Justice Cook's dissent as to Part II.A. to the extent it states that the Earlys' claims regarding the enforceability of the arbitration agreements with Harold Allen should be construed as an attack on the arbitration agreements, thereby presenting a question for the court and not the arbitrator. I express no opinion as to the merits of these claims, because the merits are not before us at this time.
ENGLAND, Justice (concurring in Part II.A., but dissenting from Part II.B.).
I agree that the Earlys did not provide substantial evidence indicating they had been fraudulently induced to enter the arbitration agreement with Harold Allen. Therefore, I concur in Part II.A. However, I respectfully dissent from Part II.B. because Southern Energy is a nonsignatory as to the arbitration agreement between Harold Allen and the Earlys, and we have held that a manufacturer cannot rely on the arbitration provisions in a contract between a buyer of a mobile home and the seller, when that manufacturer is a nonsignatory. See Ex parte Isbell, 708 So.2d 571 (Ala.1997). To the extent Southern Energy relies on a written arbitration agreement contained in its warranty document, the Magnuson-Moss Act precludes it from compelling arbitration of the breach-of-express-warranty claims.
HOUSTON, Justice (dissenting).
See my special concurrence in Southern Energy Homes, Inc. v. Lee, 732 So.2d 994, 1000-04 (Ala.1999), which I referenced for my dissent in Southern Energy Homes, Inc. v. Ard, 772 So.2d 1131 (Ala.2000).
COOK, Justice (dissenting).
The majority holds in Part II.A. of the opinion that Frances and Yolanda Early are required to arbitrate their claims against Harold Allen's Mobile Home Factory Outlet, Inc. ("Harold Allen"), and in Part II.B. that the Earlys are required to arbitrate their claims against Southern Energy Homes, Inc. ("Southern Energy"). I dissent as to both Parts II.A. and II.B.

Part II.A.
The main opinion states that the trial court held that "the Earlys had presented a claim of fraudulent inducement that the court needed to decide." 776 So.2d at 781-82. I agree with the trial court. The trial court's judgment is in accord with Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 *787 L.Ed.2d 1270 (1967). In that case, the United States Supreme Court held that claims of fraud in the inducement are, themselves, arbitrable only if they are not directed at the arbitration clause itself. Id. at 403-04, 87 S.Ct. 1801 ("if the claim is fraud in the inducement of the arbitration clause itselfan issue which goes to the `making' of the agreement to arbitrate the ... court may proceed to adjudicate it"). That is this case.
By affidavit, Yolanda Early testified that she "specifically asked [the Harold Allen salesman] if [the arbitration provision] only had to do with the situation where [she] might come into default with a payment and Harold Allen would agree to arbitrate if [she] defaulted in [her] payments." (Emphasis added.) She stated that the "[t]he salesman told [her] that that was what that clause meant." Her affidavit further stated:
"[The salesman] at no time told me that there was any agreement by me that I would have to arbitrate any claims I had against Harold Allen or the mobile home manufacturer, and when I asked him what this meant, he confirmed my understanding that Harold Allen would not take me to court if I fell behind in my payments. This is what was explained to me concerning arbitration, with regard to this purchase."
The majority states: "The gravamen of the Earlys' allegations is that Harold Allen's salesman did not fully disclose and adequately explain the separate arbitration agreement." 776 So.2d at 784. That is demonstrably untrue. The Earlys allege that the salesman affirmatively misrepresented the purpose and content of the arbitration provision in answer to the Earlys' direct inquiries. These allegations are unmistakable. Yolanda Early's affidavit places the "`making' of [an] agreement to arbitrate," Prima Paint, directly in issue.
However, the majority states: "The only evidence presented to support their challenge to the enforceability of the arbitration agreement was their own affidavits." 776 So.2d at 782. Until today, I was unaware that this Court did not accord plaintiffs' sworn affidavits evidentiary status.
Moreover, the majority holds that the Earlys' reliance on the salesman's misrepresentations was unreasonable as a matter of law. Again, I disagree. Ordinarily, whether reliance is reasonable is a question of fact for the jury. Cf. Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997). Whether reliance is reasonable requires a determination under all the facts and "circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties." Id. (emphasis added). Under these facts, the Earlys' reliance was not unreasonable as a matter of law. Thus, under Prima Paint and general contract law, the Earlys presented a justiciable issue of fraud in the inducement of the agreement to arbitrate their claims against Harold Allen.

Part II.B.
As to Part II.B., dealing with the claims against Southern Energy, I also dissent on the grounds set forth in Southern Energy Homes, Inc. v. Ard, 772 So.2d 1131, 1135 (Ala.2000) (Johnstone, J., dissenting).

Summary
As to the rulings requiring arbitration of all the Earlys' claims, I respectfully dissent.
JOHNSTONE, Justice (dissenting).
I respectfully dissent from the holding that the arbitration provisions in the written warranty issued by Southern Energy Homes, Inc., are enforceable. For the reasons I explain in my dissent in Southern Energy Homes, Inc. v. Ard, 772 So.2d 1131, 1135 (Ala.2000), I maintain that the Magnuson-Moss Act invalidates those arbitration provisions. Thus we should not require the Earlys to arbitrate their claims against Southern Energy.
I further respectfully dissent from the holding that the arbitration agreement between *788 Harold Allen's Mobile Home Factory Outlet, Inc. ("Harold Allen"), and the Earlys is enforceable. While the agreement relegates the Earlys to arbitration for any claims they may bring, the last paragraph of the agreement allows Harold Allen to sue the Earlys in court to recover the purchase price of the mobile home or to enforce Harold Allen's rights in the mobile home as collateral securing the purchase price. This paragraph is an implicit acknowledgment by the drafter, Harold Allen, that arbitration is an unfit forum for its own claims. Thus, arbitration cannot logically constitute a fit forum for the buyers' claims either. We should not relegate the buyer-plaintiffs to an unfit forum. See my dissents in Green Tree Financial Corp. v. Vintson, 753 So.2d 497, 505 (Ala.1999); Ex parte Perry, 744 So.2d 859 (Ala.1999); Ex parte Smith, 736 So.2d 604 (Ala.1999); Ryan's Family Steak Houses, Inc. v. Regelin, 735 So.2d 454 (Ala.1999). See also my special writing in Patrick Home Center, Inc. v. Karr, 730 So.2d 1171 (Ala. 1999). This aspect of the arbitration agreement between Harold Allen and the Earlys justifies the decision of the trial court to refuse to compel the plaintiffs to arbitrate their claims against Harold Allen. We should not reverse the trial court if it is right for any reason, even one ignored or rejected by the trial court or not argued by the parties. Rogers Foundation Repair, Inc. v. Powell, 748 So.2d 869 (Ala.1999); McKenzie Methane Corp. v. M-W Drilling, Inc., 653 So.2d 982 (Ala. 1995); Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988); Bank of the Southeast v. Koslin, 380 So.2d 826 (Ala.1980).
NOTES
[1] The separate arbitration agreement also contains the following numbered paragraph:

"2. All disputes, claims or controversies in any manner arising from the transaction of sale and purchase of the mobile home described herein, or from the relationships which result from the transaction between the Buyer and Seller, including this arbitration by one arbitrator who is to be selected by the Seller or by the Seller's assignee with the consent of the Buyer."
Although this particular provision of the arbitration agreement, when read in isolation, is ambiguous because it does not express a complete thought, we must consider the whole of the agreement in deriving the intent of the parties. See Charles H. McCauley Assocs., Inc. v. Snook, 339 So.2d 1011 (Ala.1976). Considering the entire agreement, we find it clear that the parties intended to submit to arbitration all claims and disputes between the Earlys and Harold Allen relating to the sale and purchase of the mobile home.
[2] The arbitration provision in Southern Energy's written warranty reads in pertinent part:

"In the event of any dispute or claim, arising out of or in connection with the design, construction, warranty or repair of any product or component supplied by the Manufacturer [Southern Energy], the condition of the product, the conformity of the product, the merchantability of the product, whether such product is or is not `new', any representations, promises, undertakings or covenants made or allegedly made by the Manufacturer in connection with or arising out of any transaction or undertaking between the Manufacturer and any purchaser, or subsequent purchaser, the Manufacturer and the purchaser of this product agree to submit such dispute or claim to binding arbitration, pursuant to the provisions of 9 U.S.C. § 1, et.seq. [sic] and according to the Commercial Rules of Arbitration of the American Arbitration Association then existing."
[3] The Earlys also sued several fictitiously named defendants and BankAmerica Housing Services, a division of Bank of America, FSB ("BankAmerica"), the company that had financed the purchase and to which the installment agreement had been assigned. BankAmerica moved to dismiss the Earlys' complaint, or, in the alternative, to compel arbitration of their claims. The trial court granted BankAmerica's motion to dismiss. BankAmerica is not a party to this appeal, and the trial court's ruling on BankAmerica's motion to dismiss is not before this Court. The Earlys have not amended their complaint to substitute the true names of any of the fictitiously named defendants. See Rule 9(h), Ala. R. Civ. P.
[4] The Earlys do not argue that the sale of the mobile home was not "a transaction involving [interstate] commerce." 9 U.S.C. § 2.
[5] We note that Harold Allen and Southern Energy, relying on Moore v. Glover, 501 So.2d 1187 (Ala.1986), argue that the Earlys' affidavits presented in support of their "Motion to Alter, Amend, Vacate, or Reconsider [the] Order" compelling arbitration were untimely filed, and, thus, that the trial court could not properly consider them in ruling on the Earlys' motion to reconsider. However, the record does not show that in the trial court Harold Allen and Southern Energy raised any objection to the Earlys' affidavits. Because this argument is raised for the first time on appeal, this Court cannot consider it. See Kitchens v. Maye, 623 So.2d 1082, 1088 (Ala. 1993); Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988).
[6] We do not interpret the Earlys' allegations as falling within the class of fraud termed fraud in the factum, or execution, as distinguished from fraud in the inducement, or treaty, and, thus, as permitting the Earlys to avoid the obligation to arbitrate. See Drinkard v. Embalmers Supply Co., 244 Ala. 619, 14 So.2d 585 (1943) (explaining distinction between fraud in the factum and fraud in the inducement). As Professor Farnsworth explains in his treatise, fraud in the factum applies only "[i]n rare cases [where] the misrepresentation is regarded as going to the very character of the proposed contract itself, as when one party induces the other to sign a document by falsely stating that it has no legal effect." E. Allan Farnsworth, Contracts, § 4.10 (1982); see also Restatement (Second) of Contracts § 163 & cmt. a (1981) ("If a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent.'). These rare cases "`include situations involving blind persons, illiterate persons, [and] foreign speaking persons.'" Alfa Mutual Ins. Co. v. Northington, 561 So.2d 1041, 1049 (on application for rehearing) (Houston, J., concurring specially) (citations omitted); see, e.g., Cancanon v. Smith Barney, Harris, Upham & Co., 805 F.2d 998 (11th Cir.1986) (case involving persons who "[had] no knowledge of the English language" 805 F.2d at 999). Alabama law has a long line of cases recognizing the following rule regarding fraud in the factum:

"`"When the execution of an instrument, which the party signing did not intend to sign, and did not know he was signing, is procured by a misrepresentation of its contents, and the party signing it does so without reading it or having it read, relying upon such misrepresentations and fraud, and believing he is signing a different instrument, he can avoid the effect of his signature notwithstanding he was able to read and had an opportunity to read the instrument."'"
Willcutt v. Union Oil Co. of California, 432 So.2d 1217, 1220 (Ala.1983) (quoting earlier cases and collecting cases). See also W.T. Rawleigh Medical Co. v. Wilson, 7 Ala.App. 242, 252, 60 So. 1001, 1005 (1912), and cases cited therein. Alabama caselaw, like the Restatement, recognizes that to constitute fraud in the factum, and thereby to prevent the formation of a contract, the misrepresentation must go to the essential nature or existence of the contract itself, for example, a misrepresentation that an instrument is a promissory note when in fact it is a mortgage, see Edwards v. Tabb, 242 Ala. 209, 210, 5 So.2d 770, 771 (1942). A misrepresentation that concerns a misapprehension of the legal meaning of a term or provision in a contract does not constitute fraud in the factum. See Rutter & Hendrix v. Hanover Fire Ins. Co., 138 Ala. 202, 215, 35 So. 33, 37 (1903) ("`[A]ll our decisions hold, that in the absence of a relation of trust and confidence, or of some other peculiar fact or circumstance, a misrepresentation of [a] matter of law, or of [a] matter of judgment equally open to the observation or inquiries of both parties, or of mere opinion, will not vitiate a contract.' ... `[A] misrepresentation of the legal effect of a written instrument was, from its very nature, but the expression of an opinion upon a question of law, equally open to the observation and inquiries of both parties, and as to which, the law presumes that the party to whom it was made had knowledge.'") (citations omitted); see also Restatement (Second) of Contracts § 164 & cmt. b, illus. 2 & 3 (1981).
The Earlys do not allege that they did not know they were signing an arbitration agreement (indeed, their question to Harold Allen's salesman makes it clear they were aware of the arbitration agreement) or that the salesman represented that the document they were signing was not an arbitration agreement or that it had no legal effect. Instead, they allege that Harold Allen's salesman misrepresented the legal meaning of the arbitration agreement and that they relied on that misrepresentation. However, under the rule of Rutter & Hendrix, absent a confidential relationship or other special circumstances between the Earlys and Harold Allen, the salesman's misrepresentation of the legal meaning of the arbitration agreement cannot form the basis for a claim of fraud in the factum. Accordingly, we would interpret the Earlys' allegations as going to inducement.
[7] Our conclusion reaffirms the importance of written contracts and the duty on the part of those entering written contracts to act reasonably by reading the terms of the documents they sign. See generally Foremost Ins. Co. v. Parham, 693 So.2d 409, 437-39 (Ala.1997) (See, J., concurring specially); see also Alfa Mut. Ins. Co. v. Northington, 561 So.2d 1041, 1048-49 (on application for rehearing) (Houston, J., concurring specially) (discussing the "`societal need to uphold the integrity and certainty of written contracts'" and "`"the duty of every contracting party to learn and know its contents before he signs [a writing]"'" (quoting Morris G. Shanker, Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court), 23 Akron L.Rev. 1 (1989))).
[8] We note that the Earlys challenge both the arbitration provision in the installment agreement and the separate arbitration agreement. On appeal, Harold Allen relies on both the arbitration provision in the installment agreement and the separate arbitration agreement. However, in the trial court, Harold Allen relied only on the separate arbitration agreement in support of its motion to compel arbitration. Harold Allen may not raise for the first time on appeal, in support of its motion to compel arbitration, the arbitration provision in the installment agreement. See Quality Truck & Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1170 (Ala.1999); Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala. 1988). Accordingly, regarding Harold Allen, we address the Earlys' challenges only in relation to the separate arbitration agreement.
[9] We note that neither Wilson nor Boyd is binding precedent on this Court. We also note that the United States Court of Appeals for the Eleventh Circuit recently remanded Boyd with instructions that the district court vacate its order denying the mobile-home manufacturer's motion to compel arbitration. Boyd v. Homes of Legend, Inc., 188 F.3d 1294, 1300 (11th Cir.1999).