I respectfully dissent.
On November 18, 2000, the plaintiff, Johnnie M. Norris, purchased a used 2000 Chevrolet Tahoe sport-utility vehicle from the defendant Massey Automotive, Inc. According to Norris's affidavit, Massey Automotive's finance manager, Bob Drinkwater, presented her with the sales contract and several other documents, including one entitled "Arbitration Agreement." He asked her to sign the documents. Norris states in her affidavit that she is diabetic and that as she was signing the documents she had a "sugar attack" and her vision became blurry. She states that she was having trouble reading and that she was forced to rely on Drinkwater to explain to her the documents he had asked her to sign. Norris further states that she specifically asked Drinkwater about the arbitration agreement because she could not read it at the time and that Drinkwater told her that the arbitration agreement was merely a formality, that "all it meant was if anything happened to the vehicle, it meant I had to bring it back to Massey [Automotive] and let them take care of it before I took it anywhere else."
On February 5, 2001, Norris sued Massey Automotive and several Massey Automotive employees alleging breach of contract, fraud, and fraud in the inducement. On April 16, 2001, Massey Automotive moved to compel arbitration. In support of its motion to compel arbitration, Massey Automotive submitted a brief and the affidavit of its general manager, Rusty Sibley. Sibley stated in his affidavit: *Page 222 
 "The vehicle made the subject of this suit was purchased by Johnnie M. Norris and was manufactured in Arlington, Texas and transported across state lines to its final destination in Andalusia, Alabama. Furthermore the funding for the purchase of this vehicle was provided by AmSouth Bank which has branch locations in the states of Alabama, Georgia, and Tennessee.
 "Finally, one of the primary owners of Massey Automotive Group, Walt Massey, is a resident citizen of the State of Mississippi, and a portion of the income from Massey Automotive Group is paid to Walt Massey in Lucedale, Mississippi."
Norris objected to Massey Automotive's motion to compel arbitration, arguing that Massey Automotive had not met its burden of proving that the transaction had a substantial effect on interstate commerce and that Drinkwater had fraudulently induced her to sign the arbitration agreement, thereby invalidating the agreement.
The trial court requested supplemental briefs addressing whether the sale of the Tahoe was a transaction that substantially affected interstate commerce. In its supplemental brief, Massey Automotive stated that the funds paid by Norris for her purchase of the Tahoe were used to pay Massey Automotive's outstanding balance to GMAC for the floor-plan financing of the Tahoe. Massey Automotive also submitted the affidavit of its business manager, Betty Reeves, who confirmed that she sent $26,000 to GMAC Financial Services located in Duluth, Georgia, in order to pay the amount Massey Automotive owed on the Tahoe. In her supplemental brief, Norris argued that under Sisters of theVisitation v. Cochran Plastering Co., 775 So.2d 759 (Ala. 2000), arbitration should be denied, because, she argued, the sale of the Tahoe was not a transaction that substantially affected interstate commerce.
On May 27, 2003, the trial court held a hearing on the motion to compel arbitration. On June 6, 2003, the trial court, without stating its reasons, denied the motion. Massey Automotive appealed; however, on June 23, 2003, Massey Automotive also moved the trial court to reconsider its denial of arbitration, arguing that the decision of the Supreme Court of the United States inCitizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037,156 L.Ed.2d 46 (2003), explicitly overruled Sisters of theVisitation. The trial court has not ruled on Massey Automotive's motion to reconsider.
All of the documents Norris signed form a single contract. SeeANCO TV Cable Co. v. Vista Communications Ltd. P'ship I,631 So.2d 860 (Ala. 1993); Cole v. Yearwood, 241 Ala. 437, 439,3 So.2d 1, 2 (1941) ("Two or more instruments executed contemporaneously by the same parties in reference to the same subject matter constitute one contract, and should be construed as one transaction with reference to each other, or they may be construed together in determining the contract."). A misrepresentation about contract provisions therefore goes to the validity of the entire contract. See Quality Truck Auto Sales,Inc. v. Yassine, 730 So.2d 1164, 1168 (Ala. 1999). Norris states in her affidavit that, "I was relying on him to explain the papers he asked me to sign." Thus, Norris's claim that Drinkwater misrepresented the content of the arbitration agreement is an attack not just on that provision but on the validity of the entire contract. Norris must either accept the contract or reject it. She cannot pick and choose by which provisions she is bound.Delta Constr. Corp. v. Gooden, 714 So.2d 975, 981 (Ala. 1998). Norris is suing based *Page 223 
on breach of the contract; therefore, she accepts the contract.
The main opinion cites Mitchell Nissan, Inc. v. Foster,775 So.2d 138, 140 (Ala. 2000), for the following rule of law:
 "`[A] person who signs an instrument without reading it, when he can read, can not, in the absence of fraud, deceit or misrepresentation, avoid the effect of his signature, because [he is] not informed of its contents; and the same rule [applies] to one who can not read, if he neglects to have it read, or to enquire as to its contents.'"
(Quoting Beck Pauli Lithographing Co. v. Houppert,104 Ala. 503, 506, 16 So. 522, 522 (1894) (emphasis omitted).) The main opinion also notes that in Torres v. State Farm Fire CasualtyCo., 438 So.2d 757, 759 (Ala. 1983), this Court explained that "[i]n order to recover for misrepresentation, the plaintiff's reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover." As the main opinion states, under Foremost Insurance Co. v. Parham,693 So.2d 409, 421 (Ala. 1997),
 "the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms."
In Torres, this Court stated: "Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests." 438 So.2d at 758-59. In Torres, the Torreses argued that when they requested flood insurance on their house an employee of their insurance agent misrepresented to them that "she would `take care of it.'" 438 So.2d at 759. Because the Torreses simply relied on the alleged misrepresentation of the employee and failed to later read their insurance premium statements and their homeowner's insurance policy to see if flood-insurance coverage had been added, this Court held that "the plaintiffs failed to exercise ordinary diligence in relying on [the employee's] statement." 438 So.2d at 759.
In this case, Norris states that she was aware that she was in fact signing an arbitration agreement that related to the Tahoe she was purchasing. She claims that the blurry vision she experienced while signing the documents temporarily hindered her ability to read documents; therefore, she claims, she reasonably relied on Drinkwater's representations. Rather than choosing to postpone signing the documents until after her "sugar attack" had subsided, or asking that the provision be read to her, Norris chose to sign the documents without reading them. A person may not claim fraudulent inducement based on an agent's oral representations when that person is able to read but has failed to read the terms of the contract. See Harold Allen's MobileHome Factory Outlet, Inc. v. Early, 776 So.2d 777, 784 (Ala. 2000); Ex parte Caver, 742 So.2d 168, 172 (Ala. 1999);Foremost Insurance, 693 So.2d at 433.
The main opinion states that Norris, who can read but who was temporarily unable to read the contract when it was presented to her, was reasonable in her reliance on the alleged misrepresentation because she asked Drinkwater to explain to her the contents of the arbitration *Page 224 
agreement and he assumed the duty of explaining that agreement. Unlike the plaintiff in Mitchell Nissan, Norris is able to read. She was fully capable of reading the arbitration agreement once her "sugar attack" subsided, or she could have asked that the document be read to her. Thus, I believe that our precedent requires Norris to have read the arbitration agreement or to have had it read to her before she signed it. See Harold Allen, 776 So.2d at 784; Ex parte Caver, 742 So.2d at 173; Torres, 438 So.2d at 759. Norris chose, instead, to have Drinkwater describe the document to her. I fail to see the principled distinction between one who is temporarily unable to read a document — perhaps having left one's glasses at home — and one who simply chooses not to read a document and to instead ask what it means.
I do not believe that Norris has met her burden of showing that the arbitration agreement was invalid, nor has she presented substantial evidence to support her claim that Drinkwater fraudulently induced her to sign the arbitration agreement. I am also mindful that this Court is obliged to apply the same contract law to arbitration agreements that it applies to all other contractual agreements. First Options of Chicago, Inc. v.Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985
(1995). Thus, the law this Court applies here today is equally the law with respect to one who asks the meaning of any other contractual provision instead of reading the contract. SeeForemost Insurance, 693 So.2d at 437 (Ala. 1997) (Shores, J., concurring specially) ("the Court's departure from the reasonable reliance rule. . . . may . . . have encouraged victims of fraud to avoid discovering potential fraud when it could have been discovered by checking oral representations against the documents memorializing the transaction"); see also Foremost Insurance, 693 So.2d at 438-39 (See, J., concurring specially) ("[s]evering the buyer's right to rely from his duty to act in a reasonable manner has discouraged buyers from reading their contracts. It has reduced the traditional costs associated with such laxity by insulating the buyer from its consequences and by providing an incentive for the buyer to recast his own carelessness as the seller's `fraud'" (footnote omitted)).
In addition to establishing the existence of a contract containing an arbitration provision, in order to compel arbitration the moving party must show that the transaction at issue "sufficiently `involved commerce' to trigger application of the FAA." Wolff Motor Co. v. White, 869 So.2d 1129, 1133 (Ala. 2003). A transaction involves interstate commerce "if in the aggregate the economic activity in question would represent `a general practice . . . subject to federal control.'" CitizensBank, 539 U.S. at 57, 123 S.Ct. 2037 (quoting Mandeville IslandFarms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236,68 S.Ct. 996, 92 L.Ed. 1328 (1948)). There is no question that the sale of the Tahoe to Norris involved interstate commerce. SeeAllied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277,115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (holding that the requirement that a transaction involve interstate commerce should be read in the broadest terms because the word "involving" signals "an intent to exercise Congress' commerce power to the full"). Massey Automotive submitted the affidavits of Rusty Sibley, its general manager, and Betsy Reeves, its business manager. Sibley stated in his affidavit that the Tahoe "was manufactured in Arlington, Texas and transported across state lines to its final destination in Andalusia, Alabama," and that the funding for the purchase of the Tahoe was provided by AmSouth Bank, which has branch locations in Alabama, Georgia, and Tennessee. Reeves stated in her affidavit that the Tahoe was financed by GMAC Financial Services, *Page 225 
which is located in Duluth, Georgia. She stated in her affidavit that the funds Norris paid to Massey Automotive when she purchased the Tahoe were paid by Reeves to GMAC in Georgia in accordance with the terms of the floor-plan financing agreement. Thus, Massey Automotive has presented ample evidence indicating that the sale of the used Tahoe to Norris is a transaction that involves interstate commerce. See Jim Burke Auto., Inc. v.McGrue, 826 So.2d 122, 130 (Ala. 2002) (noting that the sale of the used automobile was a transaction affecting interstate commerce when financing for the purchase involved two out-of-state financial corporations). Norris has not produced substantial evidence indicating that Drinkwater fraudulently induced her to sign the agreement and Massey Automotive has produced sufficient evidence indicating that the transaction at issue involves interstate commerce. Therefore, I dissent from the main opinion's affirmance of the order of the trial court denying the motion to compel arbitration; I would reverse the order of the trial court.